[Cite as *Wasinski v. PECO II, Inc.*, 2009-Ohio-2615.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

JODI D. WASINSKI,

    APPELLEE,
    CROSS-APPELLANT,                       CASE NO. 3-08-14

    v.

ADMINISTRATOR, BUREAU OF
WORKERS' COMPENSATION,

    APPELLANT,
    CROSS-APPELLEE,
    -AND-                             O P I N I O N

PECO II, INC.,

    APPELLEE.

---

JODI D. WASINSKI,

    APPELLEE,
    CROSS-APPELLANT,                       CASE NO. 3-08-16

    v.

ADMINISTRATOR, BUREAU OF
WORKERS' COMPENSATION,

    APPELLANT,
    CROSS-APPELLEE,
    -AND-                             O P I N I O N

PECO II, INC.,

    APPELLEE.

**Appeal from Crawford County Common Pleas Court**
**Trial Court No. 06-CV-0068**

**Judgments Affirmed**

**Date of Decision:    June 8, 2009**

**APPEARANCES:**

*Nancy H. Rogers and Kevin J. Reis*  for Appellant/Cross-Appellee, Administrator, Ohio Bureau of Workers' Compensation


*Jetta Mencer*  for Appellee/Cross-Appellee, Jodi D. Wasinski

**SHAW, P.J.**

**{¶1}** Appellant/Cross-Appellee, Administrator, Ohio Bureau of Workers' Compensation ("BWC") appeals from the June 2, 2008 Judgment Entry of the Court of Common Pleas, Crawford County, Ohio ordering that Appellee/Cross-Appellant Jodi D. Wasinski ("Wasinski") is entitled to participate in the benefits of the workers' compensation fund for postural tachycardia syndrome and major depression, single episode.

**{¶2}** Appellee/Cross-Appellant Wasinski cross-appeals from the February 8, 2008 Order of the Crawford County Court of Common Pleas dismissing the issue of autonomic neuropathy, excluding the testimony of Robert Jones, M.D., and determining that the issues of concussion and loss of consciousness were barred by the doctrine of res judicata and collateral estoppel. Wasinski also cross-appeals from a separate February 8, 2008 Order of the Crawford County Court of Common Pleas denying her motions in limine to exclude the testimony of Dr. Satish Raj, M.D., Dr. Gerald Steiman, M.D., and Dr. Donald Weinstein, Ph.D. Additionally, Wasinski cross-appeals from the February 11, 2008 Journal Entry of the Crawford County Court of Common Pleas excluding the testimony of Dr. Blair Grubb, M.D.

**{¶3}** This matter involves a workers' compensation case arising as an appeal to the Crawford County Court of Common Pleas filed pursuant to Ohio

Revised Code section 4123.512. Wasinski was employed by PECO II, Inc. ("PECO"), a company doing business in Crawford County, Ohio. On or about January 20, 2001 Wasinski was injured in an automobile accident while in Dallas, Texas on a business trip in the course of her employment with PECO. Wasinski filed an application for payment of compensation and benefits with the Industrial Commission of Ohio under the Ohio Workers' Compensation Act. This claim was assigned Claim No. 01-318906 and was allowed by the Industrial Commission of Ohio ("Industrial Commission") for injuries described as contusion to scalp and left knee, cervicothoracic strain, and lumbosacral strain. These conditions are not in dispute in the present appeal.

{¶4} On February 7, 2003 Wasinski moved to have Claim No. 01-0318906 modified to include the following additional allowances: (1) major depression single episode and moderate conversion disorder; (2) deferred with dependent traits; (3) multiple pain sites and neurological symptoms; and (4) pain symptoms and neurological symptoms, moderate. Wasinski's motion for the additional allowances was heard by a District Hearing Officer on July 23, 2003 and was denied. Wasinski's motion was then heard by a Staff Hearing Officer on September 15, 2003 and was denied. Wasinski's appeal to the Industrial Commission was refused on October 11, 2003.

{¶5} On December 8, 2003 Wasinski filed an appeal of the October 11, 2003 decision of the Industrial Commission with the Cuyahoga County Court of Common Pleas pursuant to R.C. 4123.512. This case was transferred to the Crawford County Court of Common Pleas and assigned Case No. 04-CV-011. However, on February 23, 2004 this case was dismissed without prejudice pursuant to Civ.R. 41(a)(1). On February 14, 2006 Wasinski re-filed her complaint and jury demand in the Crawford County Court of Common Pleas wherein she alleged the right to participate in the benefits of the workers' compensation fund for major depression, single episode. This matter was assigned **Case No. 06-CV-0068**.

{¶6} On May 12, 2006 Wasinski filed another motion with the BWC requesting that Claim No. 01-318906 be additionally allowed for postural tachycardia syndrome and autonomic neuropathy. On August 11, 2006 a District Hearing Officer for the Industrial Commission issued an order granting Wasinski's motion. However, Wasinski's employer appealed the decision of the District Hearing Officer and on September 22, 2006, a Staff Hearing Officer vacated the previous order and denied Wasinski's motion for the additional allowances. Wasinski appealed the order of the Staff Hearing Officer, and on October 6, 2006 the Industrial Commission refused further appeal.

{¶7} On November 27, 2006 Wasinski filed a notice of appeal of the October 6, 2006 decision of the Industrial Commission with the Crawford County Court of Common Pleas. On this same date Wasinski also filed a complaint and jury demand, wherein she alleged the right to participate in the benefits of the workers' compensation fund for the conditions of postural tachycardia syndrome and autonomic neuropathy. This matter was assigned **Case No. 06-CV-0508**.

{¶8} On January 3, 2007 Wasinski filed a motion to consolidate Case No. 06-CV-0508 with Case No. 06-CV-0068. On January 19, 2008 the trial court issued a Judgment Entry consolidating the two cases for trial purposes.

{¶9} These matters proceeded to a jury trial on May 13, 2008. At the close of all the evidence, the jury returned a verdict in favor of Wasinski in both causes of action. Specifically, the jury determined that Wasinski was entitled to participate in the benefits of the Workers' Compensation Law for the condition described as postural tachycardia syndrome [as contained in Case No. 06-CV-0508] and for the condition described as major depression, single episode [as contained in Case No. 06-CV-0068]. See also June 2, 2008 Judgment Entry.

{¶10} The BWC now appeals, asserting four assignments of error.

**ASSIGNMENT OF ERROR NO. 1**
**A. THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE HEARSAY OPINION REPORT OF A NON-TESTIFYING PHYSICIAN TO BE PRESENTED TO THE JURY.**

**B. THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING CROSS-EXAMINATION THAT PRESENTED TO THE JURY THE HEARSAY OPINION OF A NON-TESTIFYING PHYSICIAN.**

**C. THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE JURY TO CONSIDER THE HEARSAY OPINION OF A NON-TESTIFYING PHYSICIAN CONCERNING THE DIAGNOSIS OF A MEDICAL CONDITION NOT ALLEGED OR ADVANCED PRIOR TO TRIAL.**

**ASSIGNMENT OF ERROR NO. 2**
**THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING DEFENDANT'S MOTION TO EXCLUDE THE OPINION TESTIMONY OF TERESA EGAN, PH.D.**

**ASSIGNMENT OF ERROR NO. 3**
**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO REDACT THE WORDS "CONCUSSION", "LOSS OF CONSCIOUSNESS", AND "POST CONCUSSIVE SYNDROME" FROM MEDICAL RECORDS PRESENTED TO THE JURY.**

**ASSIGNMENT OF ERROR NO. 4**
**THE TRIAL COURT ERRED BY GIVING A JURY INSTRUCTION ON "AGGRAVATION" AND "FLOW THROUGH" WHICH THEORIES ARE NOT RELEVANT TO THE ISSUES AT TRIAL.**

{¶11} Additionally, Wasinski cross-appeals, asserting 11 assignments of error.

**ASSIGNMENT OF ERROR I**
**THE TRIAL COURT IMPROPERLY PERMITTED CROSS EXAMINATION OF DRS. STEIMAN AND RAJ REGARDING THE HEARSAY REPORT OF A NON-TESTIFYING PHYSICIAN.**

**ASSIGNMENT OF ERROR II**
**DR. EGAN RELIED ON A MISTAKEN UNDERSTANDING OR DR. FOUAD-TARAZI'S HEARSAY REPORT TO CONCLUDE THAT WASINSKI'S DEPRESSION WAS CAUSED BY THE INDUSTRIAL INJURY.**

**ASSIGNMENT OF ERROR III**
**THE TRIAL COURT ERRED BY PERMITTING THE JURY TO HEAR DR. EGAN'S TESTIMONY BECAUSE IT FAILS TO SATISFY THE REQUIREMENTS OF EVID.R. 702(B) AND (C).**

**ASSIGNMENT OF ERROR IV**
**THE TRIAL COURT ABUSED ITS DISCRETION BY SHOWING THE JURY DIAGNOSES OF CONCUSSION AND POST-CONCUSSION SYNDROME FROM NON-TESTIFYING PHYSICIANS.**

**ASSIGNMENT OF ERROR V**
**THE TRIAL COURT ERRED BY INSTRUCTING THE JURY THAT WASINSKI IS ENTITLED TO PARTICIPATE FOR "AGGRAVATION" (OF A PRE-EXISTING CONDITION) AND "FLOW THROUGH" THEORIES WHICH WERE NEVER ALLEGED, DIAGNOSED OR ADVANCED PRIOR TO TRIAL.**

**ASSIGNMENT OF ERROR VI**
**THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF ROBERT JONES, M.D.**

**ASSIGNMENT OR ERROR VII**
**THE TRIAL COURT ERRED IN ALLOWING THE OPINION TESTIMONY OF GERALD STEIMAN, M.D. AND DONALD WEINSTEIN.**

**ASSIGNMENT OF ERROR VIII**
**THE TRIAL COURT ERRED IN ALLOWING THE OPINION TESTIMONY OF SATISH RAJ, M.D.**

### ASSIGNMENT OF ERROR IX
**THE TRIAL COURT ERRED IN DISMISSING THE CAUSE OF ACTION OF AUTONOMIC NEUROPATHY.**

### ASSIGNMENT OF ERROR X
**THE TRIAL COURT ERRED IN FINDING THAT THE ISSUE OF CONCUSSION AND LOSS OF CONSCIOUSNESS WAS BARRED BY THE DOCTRINE OF RES JUDICATA AND COLLATERAL ESTOPPEL.**

### ASSIGNMENT OF ERROR XI
**THE TRIAL COURT ERRED IN EXCLUDING THE DEPOSITION TESTIMONY OF BLAIR GRUBB, M.D.**

{¶12} Prior to addressing the merits of the BWC's and Wasinski's assignments of error, we must first address various procedural issues occurring in the present appeal. First, we note that Rule 16(A) of the Ohio Rules of Appellate Procedure governs the filing of the appellant's brief and provides, in relevant part, as follows:

> **The appellant shall include in its brief, under the headings and in the order indicated, all of the following:**
> **\*\*\***
> **(7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary.**

{¶13} Next, we note that our Local Appellate Rule 11 governs assignments of error and provides as follows:

> **(A)  Each assignment of error must be separately argued in the briefs unless the same argument, and no other, pertains to more**

-9-

**than one assignment of error. "Propositions of law" may not be substituted for assignments of error.**

**(B) Assignments of error, to the degree reasonably possible, should not be general in terms but should be specifically applied to the error claimed. A general assignment of error that "the judgment is contrary to law" will be disposed of adversely to the appellant for failure to be specific.**

{¶14} In the present case, we find that the BWC's brief does not comply with App. R. 16(A)(7) as the "Law and Argument" portion of the BWC's brief does not match the assignments of error set forth on page iv of its brief. We also find that the "Law and Argument" portion of the BWC's brief is not numbered and/or lettered so as to correspond with the assignments of error. Furthermore, we note that the information set forth by the BWC prior to its "Law and Argument" portion of the brief (purportedly as a "summary" of the arguments and/or evidence to be discussed) also does not comply with App.R. 16(A)(7). Instead, this information is simply comprised of approximately eight pages of testimony, objections to testimony, and motions in limine that do not specifically correspond to the BWC's assignments of error. Additionally, we find that the brief submitted by the BWC does not comply with Loc.R. 11 as the BWC's assignments of error are not separately argued in the brief so as to correspond to the assignments of error as set forth on page iv of its brief.

{¶15} An egregious failure to comply with App.R. 16 may prompt the outright dismissal of an appeal. *In re Estate of Wilhelm* (Aug. 19, 2003), 7th Dist.

No. 02CA134. Additionally, pursuant to App.R. 12(A)(2), "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." However, in the interest of justice, we choose not to disregard the BWC's assignments of error. Instead, we shall use the assignments of error as set forth on page iv of the BWC's brief as a starting point for our analysis of the assignments of error as we decide to characterize them.

{¶16} Additionally, our review of the 11 assignments of error set forth by Wasinski in her cross-appeal reveals that Wasinski's first five assignments of error are simply responses to the BWC's assignments of error and argument on appeal. Accordingly, we shall confine our discussion and analysis of Wasinski's assignments of error to those arguments set forth as numbers VI through XI.

*BWC Assignment of Error No. 1*

{¶17} In its first assignment of error, the BWC sets forth three separate allegations: (A) that the trial court abused its discretion by permitting the hearsay report of a non-testifying physician (Dr. Fouad-Tarazi) to be presented to the jury; (B) that the trial court abused its discretion when it permitted the cross-examination of Dr. Steiman and Dr. Raj specifically regarding the hearsay report of Fouad-Tarazi; and (C) that the trial court abused its discretion by permitting the

jury to consider the opinion of Fouad-Tarazi concerning the diagnosis of a medical condition not alleged or advanced by Wasinski prior to trial. As these allegations are substantially related, we shall address them together.

{¶18} We note that decisions regarding the admissibility of evidence are within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. *State v. Yohey* (Mar. 18, 1996), 3rd Dist. No. 9-95-46, unreported, citing *State v. Graham* (1979), 58 Ohio St.2d 350, 390 N.E.2d 805 and *State v. Lundy* (1987), 41 Ohio App.3d 163. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶19} The Ohio Rules of Evidence forbid the use of hearsay evidence at trial absent a recognized exception. See Evid.R. 802. Hearsay evidence is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Additionally, Evid.R. 803 sets forth certain exceptions to the hearsay rule, and provides in relevant part, as follows:

> **The following are not excluded by the hearsay rule, even though the declarant is available as a witness:**
> **\*\*\***
> **(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information**

> **transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(1), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.[1]**

{¶20} We note that the Tenth District has previously held that "Evid.R. 803(6) does not preclude the admissibility of opinions or diagnoses contained in medical records or reports as long as they satisfy the foundational authentication requirements of Evid.R. 803(6) and do not violate other evidentiary rules (e.g. R.C. 2317.02(B); Evid.R. 402 and Evid.R. 702)." *Smith v. Dillard's Dept. Stores, Inc.* 8th Dist. No. 75787, 2000-Ohio-2689 [footnotes omitted]. Additionally, as applied to medical records, "the Supreme Court noted in *Weis v. Weis* (1947), 147 Ohio St. 416, 72 N.E.2d 245, that the purpose of the statute [R.C. 2317.40] was to 'liberalize and broaden the shop-book rule, recognized at common law as an exception to the general rule excluding hearsay evidence, and to permit the admissions of records regularly kept in the course of business…'" *Smith*, supra, citing *Weis,* 147 Ohio St. at 425. Additionally, in *Weis*, the Supreme Court of Ohio stated, in relevant part, as follows:

---

[1] The statutory equivalent of the business records exception to the hearsay rule is contained in Ohio Revised Code section 2317.40.

> **[T]hose portions of hospital records made in the regular course of business and pertaining to the business of hospitalization and recording observable acts, transactions, occurrences or events incident to the treatment of a patient are admissible, in the absence of privilege, as evidence of the facts therein recorded, insofar as such records are helpful to an understanding of the medical or surgical aspects of the case, provided such records have been prepared, identified and authenticated in the manner specified in the statute itself. (Citations omitted).**

> **Such a hospital or physician's office record may properly include case history, diagnosis by one qualified to make it, condition and treatment of the patient covering such items as temperature, pulse, respiration, symptoms, food and medicines given, analysis of the tissues or fluids of the body and the behavior of and complaints made by the patient. (Citations omitted).**

*Weis*, 147 Ohio St. at 424-425.

{¶21} In the present case, we note that the allegations contained in the BWC's first assignment of error all relate to the admission, cross-examination related to, and the jury's consideration of Fouad-Tarazi's April 2, 2003 report, entered into evidence as Wasinski's Exhibit A. However, prior to addressing the merits of the BWC's first assignment of error, we must review the relevant facts and subsequent issues at trial concerning the April 2, 2003 report.

{¶22} After returning to Ohio after the January 20, 2001 motor vehicle accident, Wasinski sought medical treatment from Dr. Paveer Kumar at Midwest Internal Medicine in Marion, Ohio. Dr. Kumar referred Wasinski to Dr. Blake Kellum, and Wasinski began treating with Kellum in Marion, Ohio on February

23, 2001. On March 16, 2001 Wasinski began treating with Dr. Raymond Baddour of Central Ohio Neurology, Inc. in Mansfield, Ohio.

{¶23} In October, 2001 Wasinski began treating at the Cleveland Clinic due to her continuing problems with falling, blackouts, dizziness, and problems walking. While being treated at the Cleveland Clinic, Wasinski began seeing Dr. Robert Jones as her primary care physician. As Wasinski continued having back and neck pain, she was also treated by Dr. Oas at the pain clinic at the Cleveland Clinic. Wasinski also saw Dr. Fouad-Tarazi at the Cleveland Clinic's Syncope Clinic who performed a passive tilt table test on Wasinski on March 26, 2003. Dr. Jones subsequently referred Wasinski to Dr. Blair Grubb at the University of Toledo Medical Center. Grubb first saw Wasinski on November 15, 2005 and diagnosed Wasinski as suffering from postural orthostatic tachycardia syndrome, or POTS.

{¶24} In support of the allegations contained in its first assignment of error, specifically sub-sections (A) and (C), the BWC directs this Court's attention to the language of Fouad-Tarazi's April 2, 2003 report which provides, in relevant part, as follows:

> **The patient [Wasinski] tolerated 70 degrees of tilt for 45 minutes. During the tilt, patient complained of no symptoms. The SBT declined gradually and moderately during HUT…the DBP showed an initial normal response to HUT followed by a mild relative with oscillation in late 70 degree tilt…The heart rate response to HUT was diagnostic of Progressive Orthostatic**

**Tachydcardia Syndrome (POTS)…At maximum tilt, BP=145/65 and HR=109. The test was terminated due to end of protocol. Recovery was rapid and uneventful.**

{¶25} On appeal, the BWC argues that because Fouad-Tarazi's report states that Wasinski had "progressive orthostatic tachycardia syndrome," it conflicts with other testimony that Wasinski had "postural tachycardia syndrome." Additionally, the BWC states that because Fouad-Tarazi did not testify, there is no testimony or additional statement from her that Wasinski was suffering from "postural orthostatic tachycardia syndrome" and not "progressive orthostatic tachycardia syndrome" as stated in her April 2, 2003 report. Therefore, the BWC argues that the trial court should not have permitted the jury to see Fouad-Tarazi's report.

{¶26} Our review of the record reveals that during trial, Wasinski provided the video deposition testimony of Dr. Grubb. Grubb testified that he is licensed to practice medicine in Ohio, and that he is board certified in the areas of internal medicine, cardiology, and electrophysiology. Grubb testified that he is a physician at the University of Toledo Medical Center and that he specifically practices in the Electrophysiology and Autonomic Function Clinic.

{¶27} Grubb testified that his initial visit with Wasinski was on November 15, 2005 after she was referred by Dr. Jones for a "second opinion as to whether or not she had a type of disorder called postural tachycardia syndrome." Grubb

testified that during his initial visit with Wasinski he took her medical history and examined her, which revealed that her blood pressure and heart rate control did not appear to be normal. Additionally, Grubb testified as follows:

> **We also—she [Wasinski] had been previously evaluated at the Cleveland Clinic and had undergone an extensive series of evaluations of her autonomic function by one of the—one of the physicians there and in reviewing that data as well as her history and other findings we concurred with the Cleveland Clinic diagnosis that she had postural tachycardia syndrome.**

(Grubb, Tr. p. 8).

{¶28} Grubb also testified that "the full name is postural orthostatic tachycardia syndrome and rather than say that people abbreviate it as POTS." Additionally, Grubb testified at length regarding the symptoms of POTS, and stated that people that sometimes suffer from POTS "are those who suffer some kind of trauma, motor vehicle accidents, but also things, sometimes surgeries and similar things can seem to…provoke symptoms." In speaking about people suffering from POTS after experiencing trauma, Grubb testified that "[u]sually injury that occurs to the brain and more particularly the brain stem appears to be the most common site where these injuries will lead to a thing like postural tachycardia syndrome." When asked how one would sustain an injury to the brain or brain stem, Grubb answered, "[a]nything that would provide a sudden movement or blow to the head such as in an automobile accident…" Grubb also testified that it would not be unusual for tests such as a MRI, CAT scan, or x-rays

-17-

taken around the time of the accident to be normal, and an individual still develop POTS as a result of a motor vehicle accident.

{¶29} Additionally, Grubb testified regarding the importance of and procedures used in conducting a tilt table test when determining whether a patient is suffering from POTS. Grubb testified that "heart rate and blood pressure are the typical things measured during the course of the test." In reviewing Fouad-Tarazi's report and being asked what specifically happened with respect to Wasinski's heart and blood pressure during the tilt table test, Grubb testified as follows:

> **Her heart rate initially was 66 beats a minute. The—it's—POTS is defined by an increase of about at least 30 beats a minute in the first 10 minutes of upright posture or a peak heart rate that exceeds 120, so she had in those very early minutes a greater than 30 beats per minute increase and that was the define— that's the—that's the usual definition that's employed in diagnosing the condition.**

(Grubb, Tr. p. 14).

{¶30} Grubb also testified that based on the information Wasinski provided, he was able to determine that her POTS "appeared to temporally be related to her motor vehicle accident." Specifically, Grubb testified that "according to the information she [Wasinski] provided to us, that her symptoms did not begin until after the motor vehicle accident had occurred." Grubb testified

that in his opinion, Wasinski suffers from POTS and autonomic neuropathy as a result of the January 20, 2001 motor vehicle accident.

{¶31} Our review of the record reveals that Fouad-Tarazi's April 2, 2003 report was a record kept in the regular course of treatment, in a regularly conducted business activity (i.e. by the Cleveland Clinic), that it contained relevant, probative evidence of Wasinski's medical condition, and there was no question concerning its authenticity. Additionally, we note that this report was used by Grubb in his treatment of Wasinski and in making his own diagnosis that Wasinski was suffering from POTS. Furthermore, it is clear from the testimony presented that Dr. Grubb did not rely *solely* on Fouad-Tarazi's report in diagnosing Wasinski with POTS, and that Fouad-Tarazi's report was clearly not the sole basis for Grubb's subsequent diagnosis of POTS. Additionally, we note that when Grubb specifically testified regarding Wasinski's evaluation at the Cleveland Clinic and his concurrence with the diagnosis of POTS, counsel for the BWC did not object to this testimony being presented.

{¶32} Based on the foregoing, we find that Fouad-Tarazi's April 2, 2003 report itself falls within a recognized exception to the hearsay rule. See Evid.R. 803(6). Therefore, we find that the trial court did not abuse its discretion by permitting Fouad-Tarazi's report to be admitted into evidence and considered by the jury during their deliberations.

{¶33} Turning our attention to the allegations contained in sub-section (B) of the BWC's first assignment of error, we note that the BWC alleges that the trial court abused its discretion by permitting Wasinski to cross-examine the BWC's expert witnesses regarding Fouad-Tarazi's April 2, 2003 report. Specifically, the BWC alleges that Wasinski introduced the hearsay testimony of Fouad-Tarazi through Wasinski's cross-examination of Dr. Steiman and Dr. Raj.

{¶34} In support of this allegation, the BWC argues that the diagnoses or opinions of a non-testifying physician witness are not admissible as evidence. However, we note that in its appellate brief, the BWC concedes that "statements by non-testifying physicians may sometimes be admitted under the business records exception to the hearsay rule, the proponent of such evidence must establish that the business records exception applies."

{¶35} As we have previously determined, Fouad-Tarazi's April 2, 2003 report falls within a recognized exception to the hearsay rule. See Evid.R. 803(6). Additionally, our review of the record reveals that Grubb testified that Wasinski was suffering from postural tachycardia syndrome on November 7, 2007, which was well before Steiman testified on January 22, 2008 and Raj testified on January 23, 2008. Furthermore, our review of the record also reveals that Grubb's testimony was presented to the jury prior to the presentation of Steiman and Raj's testimony. In reviewing the record we find nothing prejudicial to the BWC as

related to Steiman or Raj's testimony and, in light of our previous determination that the trial court did not abuse its discretion by allowing Fouad-Tarazi's report to be admitted into evidence, we find that the BWC was not prejudiced by the trial court's admission of Steiman and Raj's cross-examination testimony. Therefore, we find that the trial court did not abuse its discretion by permitting Wasinski to cross-examine the BWC's expert witnesses regarding Fouad-Tarazi's April 2, 2003 report.

{¶36} Based on the foregoing, the BWC's first assignment of error is overruled.

*BWC Assignment of Error No. 2*

{¶37} In its second assignment of error, the BWC alleges that the trial court abused its discretion by overruling the BWC's motion to exclude the opinion testimony of Teresa Egan, Ph.D. as Egan's testimony fails to satisfy the requirements set forth in Ohio Evidence Rule 702(B) and (C).

{¶38} The trial court has sound discretion to determine an expert witness' qualifications to testify on a particular subject. *State v. Jones* (2000), 90 Ohio St.3d 403, 414, 739 N.E.2d 300 citing *State v. Awkal* (1996), 76 Ohio St.3d 324, 331, 667 N.E.2d 960. Therefore, any decision concerning the admission or exclusion of expert testimony will not be disturbed absent an abuse of discretion. *Jones*, *supra,* citing *State v. Bidinost* (1994), 71 Ohio St.3d 449, 453, 644 N.E.2d

318. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

{¶39} Expert testimony must meet the criteria of Evid.R. 702 which provides that a witness may testify as an expert if all of the following apply:

> **(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;**
> **(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;**
> **(C) The witness' testimony is based on reliable scientific, technical, or other specialized information…**

Evid.R. 702; see also *State v. Rowe*, 3rd Dist. Nos. 14-05-31, 14-05-46, 2006-Ohio-1883, citing *State v. Hartman* (2001), 93 Ohio St.3d 274, 283-84, 754 N.E.2d 1150.

{¶40} Our review of the record reveals that Teresa Egan, Ph.D. ("Egan") provided her deposition testimony on April 21, 2008.[2] Egan testified that she is a clinical psychologist and that she is licensed to practice psychology in the State of Ohio. Egan testified that she treats a range of patients for a variety of mental

---

[2] Our review of the record reveals that Egan was deposed by both the BWC (at 9:05 a.m.) and Wasinski (at 11:00 a.m.) on April 21, 2008.

health issues such as anxiety, depression, and adjustment issues. Egan testified that in the course of her training in psychology, she received training concerning determining the cause of certain types of psychological conditions. Egan also testified that in treating a patient, it is important to know the cause or have an idea of the cause of the patient's psychological issues.

{¶41} Egan testified that she began treating Wasinski as a patient in April 2001, after Wasinski was referred for mental health counseling by her neurologist. Egan testified during Wasinski's first office visit she obtained a detailed history from Wasinski, conducted a mental status exam, and diagnosed Wasinski as suffering from major depressive disorder, single episode. Egan testified that her opinion is that the physical aliments that resulted from Wasinski's injury (on January 21, 2001) are a cause of her major depression. Egan also testified as follows:

> **I think part of treatment, being a treating psychologist is trying to discern what causes or things may have set this particular set of problems in motion so that we can understand a little more about that and that that may help guide some of our treatment decisions, coping strategies that we would work with the client and so on. So to that extent, part of treatment is assessment and evaluation, which includes looking at causation.**

{¶42} In addressing the criteria contained in Evid.R. 702 in the context of the facts of the present case, we find that the issue of diagnosis and treatment of depression are matters outside of the scope of knowledge or experience possessed

by an ordinary lay person, such as a member of a jury. We also find that Egan's testimony directly related to Wasinski's depression and was necessary to determine Wasinski's psychiatric condition. Accordingly, Egan's testimony satisfies the requirements of Evid.R. 702(A).

{¶43} Turning our attention to the second criteria set forth in Evid.R. 702, we note that Egan's testimony reveals that she has earned a Ph.D. in clinical psychology from Kent State University as well as a Master's degree in clinical and community psychology from Cleveland State University and has been licensed to practice psychology in Ohio since 1989. Additionally, Egan testified that she currently practices in the field of clinical psychology and has been treating Wasinski since 2001. Accordingly, we find that Egan is qualified to testify as an expert by specialized knowledge, experience, training, and education regarding the subject matter of her testimony provided. Therefore, Egan's testimony satisfies the requirements of Evid.R. 702(B).

{¶44} Finally, regarding the third criteria set forth in Evid.R. 702, our review of the record reveals that Egan's testimony was based on other specialized information. Egan testified regarding her detailed knowledge concerning Wasinski, her complaints, and her history. Additionally, Egan based both her diagnosis of major depression, single episode, and her opinion concerning the cause of Wasinski's depression, on several factors. These factors specifically

include the mental status examination she performed on Wasinski, Wasinski's medical history, numerous office visits and interviews of Wasinski, and her general observations of Wasinski over the course of her therapy sessions. Furthermore, as specifically related to Evid.R. 702(C) we note that the record reflects that Egan evaluated and diagnosed Wasinski pursuant to accepted psychological standards and did not create or use a new scientific method in her treatment of Wasinski. Accordingly, Egan's testimony satisfies the requirements of Evid.R. 702(C).

{¶45} Based on the foregoing, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably by overruling the BWC's motion to exclude the opinion testimony of Teresa Egan, Ph.D. Accordingly, the BWC's second assignment of error is overruled.

### *BWC Assignment of Error No. 3*

{¶46} In its third assignment of error, the BWC alleges that the trial court abused its discretion by failing to redact the words "concussion," "loss of consciousness" and "post concussive syndrome" from the medical records admitted into evidence and presented to the jury as the only medical expert to testify for Wasinski did not find a loss of consciousness at the accident scene, nor did he diagnose a concussion or post-concussion syndrome.

{¶47} Prior to addressing the merits of the BWC's third assignment of error, we note that the BWC failed to present any citations to legal authority or statutes in its initial brief to this court specifically pertaining to its third assignment of error, contrary to the requirements of App.R. 16(A)(7). However, we do note that minimal citations to legal authority are contained in the BWC's reply brief.

{¶48} Trial courts have broad discretion in determining whether to admit or exclude evidence. *Deskins v. Cunningham*, 3rd Dist. No. 14-05-29, 2006-Ohio-2003 citing *Huffman v. Hair Surgeon, Inc.* (1984), 19 Ohio St.3d 83, 482 N.E.2d 1248. An appellate court will not reverse a trial court's decision to admit or exclude evidence absent an abuse of discretion. *State v. Osborn*, 3rd Dist. No. 9-05-35, 2006-Ohio-1890 citing *State v. Bronlow*, 3rd Dist. No. 1-02-95, 2003-Ohio-5757; *Wightman v. Consol. Rail Corp.* (1999), 86 Ohio St.3d 431, 437, 735 N.E.2d 546. Additionally, Civ.R. 61 provides, in relevant part, as follows:

> **No error in either the admission or exclusion of evidence \*\*\* is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.**

See also, *In re Matthews*, 3rd Dist. Nos. 9-07-28, 9-07-29, 9-07-34, 2008-Ohio-276. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably.

*Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

{¶49} Our review of the record reveals that on February 4, 2008 the BWC filed a motion in limine requesting that the trial court prohibit any evidence or argument by Wasinski alleging a "loss of consciousness" or "concussion." In support of this motion, the BWC alleged that there was no expert testimony presented concerning a diagnosis of concussion, nor was there any expert testimony presented alleging that either a concussion or loss of consciousness was the proximate cause of Wasinski's alleged conditions. The BWC also alleged that Wasinski's claim of "post-concussion syndrome" was previously denied by the Industrial Commission because there was no credible evidence of a loss of consciousness at the scene of the accident and therefore, these claims were barred by the doctrines of res judicata and collateral estoppel.

{¶50} On February 8, 2008 the trial court issued an Order granting the BWC's motions in limine as related to the prohibition of any evidence or argument alleging a "loss of consciousness," "concussion" and "post-concussion syndrome." In its Order, the trial court referred to these specific motions in limine as "Branches 4&5" and granted said motions "based on the doctrine of res judicata and collateral estoppel." On February 11, 2008 Wasinski filed a response to the

BWC's motions in limine, and on May 9, 2008 Wasinski filed a motion for reconsideration of the trial court's February 8, 2008 Order.

{¶51} In response to the allegations set forth in the BWC's third assignment of error, Wasinski submits that the records containing the issues of "concussion," "loss of consciousness" and "post-concussion syndrome" also contained detailed descriptions of her complaints and the diagnostic tests that occurred immediately after her industrial injury. Accordingly, Wasinski argues that the medical records documenting her physical condition near the time of her industrial injury were relevant to her diagnosis and opinion concerning the causation of her problems. Therefore, Wasinski argues that the records were properly admissible in the present case and the trial court did not abuse its discretion in admitting the medical records containing the words "concussion," "loss of consciousness" and "post-concussion syndrome" and presenting the same to the jury.

{¶52} It is well established that a decision on a motion in limine is a "tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. *State v. Geboy* (2001), 145 Ohio St.3d 706, 726, 764 N.E.2d 451 citing *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 503 N.E.2d 142. Because a ruling on a motion in limine is not considered final, "[a]n appellate court need not review the propriety of such an

order unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial." *Id*. See, also, *Gollihue v. Consol. Rail Corp.* (1997), 120 Ohio App.3d 378, 288, 697 N.E.2d 1109.

{¶53} At the close of her case-in-chief, Wasinski's counsel moved to have Exhibit B (office notes of Dr. Jones regarding his December 14, 2001 office visit with Wasinski) admitted into evidence. Counsel for the BWC objected to the admission of Exhibit B and the following exchange occurred:

> **Mr. Reis: Loss of consciousness has been stricken by the Court. There's references to loss of consciousness. She said she woke up by a fireman tapping on her window. That's also objectionable, Your Honor, because of this Court's previous ruling that no loss of consciousness or concussion or evidence of that nature would be admissible in this case.**
>
> **The Court: Yeah, Dr.—Jetta, Dr. Jones's notes, I think he's right, they were covered by something else by a previous ruling. But I'll let you put what you want on the record.**
>
> **Ms. Mencer: I'm not sure they were covered. I know you struck the deposition and I—again, I was unclear as to the reason all the deposition was struck. I understand there might have been issues concerning his opinion testimony.**
>
> **The Court: Sure.**
>
> **Ms. Mencer: But again, it's a medical record.**
>
> **The Court: Did any of the other doctors use it whose testimony we did hear or are going to hear?**

Ms. Mencer:  I –you know, I'm not certain that I didn't ask—I don't recall whether I asked—Dr. Grubb did not use it, no.  Did I ask questions in cross?  I'm not certain whether I did.  Did the other doctors have that record and, you know, use it as part of the—their opinions, I'm certain they have had to.

The Court:  Did your doctors have access to Dr. Jones's notes as part of their records that they reviewed?

Mr. Reis:  Yes, Your Honor.

The Court:  All right, overruled.  B will be admitted.

(Tr. Vol. III, pp. 368-369).

{¶54} Wasinski also moved to have Exhibit E (records of Dr. Baddour regarding his care of Wasinski beginning March 16, 2001) admitted into evidence. Counsel for the BWC objected to the admission of Exhibit E and the following exchange occurred:

The Court:  Go ahead, put them on the record.  Once again, are these—were the records in the form they're in now given to the doctors that are testifying?

Ms. Mencer:  Other than the top page.

The Court:  Other than the front page; do you agree with that?  All the doctors had access to everything you've got in your hand here before they testified?

Mr. Reis:  Yes, Your Honor.

The Court:  Okay, well put your objections in the record.

Mr. Reis:  Again, loss of consciousness is in the letter of April 26, 2001, Dr. Baddour's record.  Again, this court ruled subsequent, Your Honor, to my doctors having reviewed these records.  And

**I would submit that part of the independent medical examination process is to provide the expert with all records. At that point in time we don't know what the Court's ruling is going to be on the admissibility of these diagnoses or phrase contained in the reports.**

**So therefore, even though they reviewed them, that doesn't make it admissible. Counsel could have questioned that doctor about loss of consciousness or concussion or words to that effect.**

**She did not do that; therefore, by providing the record to the doctor and that pertains to all exhibits we're talking about, A, B, C, D, and E, the Defendant is not thereby waiving the objection because this Court did not rule upon the motion in limine until February 11, 2008. So for the record, I understand the Court's ruling, but, for the record, loss of consciousness is contained in this record various places…**
\*\*\*
**The Court: Well, you made your record. I understand where you're coming from. But they're overruled. Baddour's will be admitted as is.**

(Tr. Vol. III, pp. 373-376).

**{¶55}** The power to grant a motion in limine lies within the inherent power and discretion of a trial court to control its proceedings. *State v. Grubb*, 28 Ohio St.3d at 201 citing *State v. Spahr* (1976), 47 Ohio App.2d 221, 224, 353 N.E.2d 624. Additionally, the function of a motion in limine as a precautionary instruction is to avoid error, prejudice, and possibly a mistrial by prohibiting opposing counsel from raising or making reference to an evidentiary issue until the trial court is better able to rule upon its admissibility outside the presence of a jury once the trial has commenced. *Id.*

{¶56} We also note that "[t]he sustaining of a motion in limine does not determine the admissibility of the evidence to which it is directed. Rather it is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine *from the total circumstances of the case* whether the evidence would be admissible." (Emphasis added). *Id.* referencing *State v. Leslie* (1984), 14 Ohio App.3d 343, 471 N.E.2d 503. Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty to consider the admissibility of the disputed evidence in its actual context. *Grubb*, 28 Ohio St.3d at 202 citing *State v. White* (1982), 6 Ohio App.3d 1, 4, 451 N.E.2d 533.

{¶57} In the present case, our review of the record reveals that Wasinski's medical records admitted into evidence were all provided to the BWC's expert witnesses for their review and were also authenticated by counsel for the BWC. (See also Tr. Vol. III pp. 372-373). Furthermore, we note that the BWC has not indicated on appeal how the trial court's failure to redact the words "concussion," "loss of consciousness," and "post-concussive syndrome" has materially prejudiced the BWC.

{¶58} Based on the foregoing, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably by failing to redact the words "concussion," "loss of consciousness," and "post concussive syndrome" from the

medical records presented to the jury and therefore find that the trial court did not abuse its discretion. Accordingly, the BWC's third assignment of error is overruled.

### *BWC Assignment of Error No. 4*

**{¶59}** In its fourth assignment of error, the BWC alleges that the trial court erred and abused its discretion by giving jury instructions on "aggravation" and "flow through" as these theories were not relevant to the issues presented at trial.

**{¶60}** It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Murphy v. Carrolton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828 citing *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 348 N.E.2d 135. In general, requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction. *Id.* "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n]…instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Id.* citing *Feterle v. Huettner* (1971), 28 Ohio St.2d 54, 275 N.E.2d 340 at syllabus.

**{¶61}** In reviewing the sufficiency of jury instructions given by a trial court, an appellate court must not disturb the trial court's instructions unless the

record demonstrates an abuse of discretion, as it is within the sound discretion of the trial court to instruct the jury. *State v. Wright*, 3rd Dist. No. 5-01-10, 2001-Ohio-2258 citing *State v. Dailey*, 3rd Dist. No. 5-99-56, 2000-Ohio-1818. An abuse of discretion occurs when the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d at 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.*

{¶62} In the present case, the BWC filed its proposed jury instructions with the trial court on February 4, 2008 and on February 5, 2008 Wasinski filed her request for jury instructions with the trial court. Wasinski's request for jury instructions requested an instruction on the issue of "aggravation" which read as follows:

> **Employers take their employees as they find them and assume the risk of having an employee's pre-existing condition made worse by some injury which would not hurt or bother a perfectly healthy person. It is not necessary for the employee to prove that the aggravation is substantial in order to participate in the Workers' Compensation fund. (3 OJI 365.13).**

{¶63} Wasinski also requested an instruction on the issue of "flow through condition" wherein Wasinski advised the court that "[a] "flow through condition" occurs when the employee's work-related injury generates a medical condition in a body part other than that which the employee originally specified."

{¶64} On appeal, the BWC alleges that Wasinski never asserted the theory of "aggravation" in her complaint filed with the Crawford County Court of Common Pleas, nor did she seek to amend her complaint to include this theory. The BWC also alleges that Wasinski did not elicit expert witness testimony to assert the theories of "aggravation" and "flow through" prior to or during trial. Therefore, the BWC alleges that because jury instructions must be consistent with the theory of causation for the medical condition appealed to the common pleas court, and because the theories of "aggravation" and "flow through" were not set forth by Wasinski nor testified to during trial, the trial court abused its discretion by providing the jury with instructions on "aggravation" and "flow through."

{¶65} In response, Wasinski alleges that her major depression arose from the pain and the *disability* she suffered due to her industrial injury, not that her major depression was caused by her industrial injury. Additionally, Wasinski alleges that psychological injuries are only allowed in the claim as flow-through injuries—that the injury generates a medical condition in a body part other than that which the employee originally specified.

{¶66} In support of her allegations, Wasinski directs this court's attention to R.C. 4123.01(C) which provides as follows[3]:

---

[3] We note that R.C. 4123.01 was amended by 2008 Ohio Laws File 97 (Am. Sub. S.B.) which was approved on June 11, 2008. However, we note that the language of subsection (C) was not changed or otherwise amended by 2008 Ohio Laws File 97.

**(C) "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. "Injury" <u>does not</u> include:**

**(1) Psychiatric conditions except where the claimant's psychiatric conditions have arisen from an injury or occupational disease sustained by the claimant or where the claimant's psychiatric conditions have arisen from sexual conduct in which the claimant was forced by threat of physical harm to engage or participate;**

**(2) Injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body;**

**(3) Injury or disability incurred in voluntary participation in an employer-sponsored recreation or fitness activity if the employee signs a waiver of the employee's right to compensation or benefits under this chapter prior to engaging in the recreation or fitness activity;**

**(4) A condition that pre-existed an injury unless that pre-existing condition is substantially aggravated by the injury. Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.**

**{¶67}** Wasinski also directs this court's attention to Ohio Jury Instruction

CV 427.13[4] which provides as follows:

> **<u>Aggravation</u>. Employers take their employees as they find them and assume the risk of having an employee's pre-existing**

---

[4] We note that in her brief to this court, Wasinski directs our attention to 3 OJI 365.13. However, the instruction cited by Wasinski has been updated and accordingly, we cite to OJI CV 427.13, which contains language substantially similar to the language set forth by Wasinski.

**condition (aggravated) (made worse) by some injury which would not hurt or bother a perfectly healthy person. It is not necessary for the employee to prove that the aggravation is substantial in order to (participate) (continue to participate) in the Workers' Compensation fund.**

{¶68} Our review of the record reveals that during the jury trial in this matter, the jury was presented with the video deposition testimony of Teresa Egan, Ph.D. ("Egan"). Egan testified that she is a licensed clinical psychologist who treats mental health issues including anxiety and depression disorders. Egan testified that she has treated Wasinski since April 2001 and that she diagnosed Wasinski with major depressive disorder, single episode.[5] Egan also testified that "the onset of [Wasinski's] symptoms of depression occurred with the motor vehicle accident in January, '01 and the subsequent effect that those physical problems had on her ability to work and to function in other areas of her life." Egan also testified that a cause of Wasinski's major depression is the effect that her physical ailments and symptoms that resulted from her automobile injury, have had on her life.

{¶69} Our review of the record also reveals that at the close of the BWC's case-in-chief, the trial court discussed jury instructions with counsel for both parties and the following exchange occurred:

---

[5] Regarding the diagnosis of "major depressive disorder, single episode" Egan specifically testified that "major depressive episode represents a set of symptoms that include factors such as impaired concentration, sadness, tearfulness, irritability, sleep disruption, sometimes appetite disruption, feelings of hopelessness or helplessness, sometimes suicidal thoughts."

**The Court: I've been told by Ms. Mack that, apparently, the parties are in agreement except for one instruction that was requested by the Plaintiff; is that correct? And that would be the one on flow through conditions. Is that the one you want to be heard on, Mr. Reis?**
**\*\*\***
**The Court: I just want to hear your objection, if any, on the proposed instructions.**
**\*\*\***
**Mr. Reis: And then the next objection I had concerning proximate cause, Ms. Mencer has shown me the OJI from which she obtained that instruction. We have an objection—our next objection is Page 18. I'm looking at the original copy. It talks about aggravation. This is not an aggravation case so, therefore, that jury instruction is not appropriate at all.**
**\*\*\***
**The Court: Aggravation.**

**Mr. Reis: I think it will be confusing, Your Honor. I don't think it's appropriate.**

**The Court: Well, I think based on the evidence I heard, that fits in close enough and so your objection is noted but overruled. I'm gonna leave that in. And then let's see, do you have an objection on new Page 19 as to the flow through?**

**Mr. Reis: Okay, I didn't see that one. That was just added. Again, this is not a flow through case. Again, that has to do with—**

**Ms. Mencer: Depression is flow through.**

**Mr. Reis: Well, again, it goes back to my objection on aggravation. For the benefit of the Court, a Worker's Comp case has to be brought as, for instance—examples, I aggravated my degenerative disc disease. That is the condition that's brought at administrative level. So we're not a *Moore v. Kroger* situation where Plaintiff has changed the nature of their case. There's no testimony from the expert that this is an aggravation**

**case or a flow through case and, therefore, it would be improper to have any instruction on either aggravation or flow through.**

**Ms. Mencer: Your Honor, depression by nature is a flow through injury. Psychological injuries that result from a specific incident are not allowable. This is clearly flow through. I mean, depression is—**

**The Court: I agree with her. I think this instruction—I mean, and your objection, once again is there on the record, but I gotta make a decision. And based on what I've heard, I do think this is a reasonable request by the Plaintiff and I'm going to allow that one in.**

(Tr. Vol. IV, pp. 436-438).

**{¶70}** When subsequently providing oral instructions to the jury the trial

court instructed the jury, in relevant part, as follows:

**A "flow through condition" occurs when the employee's work-related injury generates a medical condition in a body part other than that which the employee originally specified.**

**Employers take their employees as they find them and assume the risk of having an employee's pre-existing condition aggravated by some injury which would not hurt or bother a perfectly healthy person.**

(Tr. p. 510).[6]

**{¶71}** Based on the foregoing, we find that the jury instructions given on

"aggravation" and "flow through" were proper statements of the law. However,

upon review of the record, we do not believe there was sufficient evidence,

---

[6] Our review of the record reveals that the written instructions provided to the jury were exactly the same as the oral instructions provided by the court.

argument, or other indication of a pre-existing condition that was "aggravated" by the industrial injury to support the jury instruction on "aggravation." On the other hand, there was expert testimony that Wasinski's alleged depression was directly caused by the disabilities resulting from the previously allowed industrial injury.

**{¶72}** Accordingly, we find that the trial court's jury instruction as to "flow through" was supported in the evidence. However, we find that on this record, it was error for the trial court to instruct the jury as to the "aggravation" of a pre-existing injury. Nevertheless, in view of the ample evidence supporting the "flow through" instruction, the error as to the "aggravation" instruction was harmless. Therefore, the BWC's fourth assignment of error is overruled.

*Wasinski's Cross-Appeal/Assignments of Error VI-XI*

**{¶73}** Prior to addressing the merits of Wasinski's assignments of error, we must first address a discussion that occurred during oral argument in this matter. On December 9, 2007 counsel for the BWC and Wasinski appeared before this court for oral argument. During Wasinski's argument, this court inquired as to the status of Wasinski's assignments of error, should the court ultimately overrule the BWC's assignments of error in its written opinion. In response, Wasinski's counsel stated that she would withdraw assignments of error 6-9 and 11 should this court overrule the BWC's assignments of error and affirm the judgment of the trial court. Accordingly, as we have overruled all of the BWC's assignments of

error, we shall confine our analysis of Wasinski's cross-appeal to her argument contained in Assignment of Error X.

*Assignment of Error X*

{¶74} In her tenth assignment of error, Wasinski alleges that the trial court erred by finding that the issues of "concussion" and "loss of consciousness" were barred by the doctrine of res judicata and collateral estoppel. In support of this allegation, Wasinski submits that the issues of concussion and loss of consciousness have never been adjudicated by the Industrial Commission or any other court.

{¶75} Our review of the record reveals that on February 4, 2008 the BWC filed motions in limine wherein the BWC requested that the trial court prohibit, in relevant part, as follows:

> **4. To prohibit any evidence, argument alleging a "loss of consciousness" or "concussion." First, there is no expert testimony concerning a diagnosis of "concussion." Second, Plaintiff's (sic) Claim of "post concussion syndrome" was previously denied by the Industrial Commission for the reason that there was no credible evidence of a loss of consciousness at the accident scene. Furthermore, there is no expert testimony from either Dr. Grubb or Dr. Jones of alleging a "concussion" (a medical condition) or "loss of consciousness" to be the proximate cause of her alleged conditions. Finally, evidence or argument of a "loss of consciousness" or "concussion" is barred by the doctrine of res judicata and collateral estoppel. *McCabe v. Zeller Corp.* (1997), 117 Ohio App.3d 209.**

**{¶76}** In support of these requests, the BWC argued that it was anticipated that during trial Wasinski and her witnesses would refer to a loss of consciousness or concussion occurring at the accident scene in Dallas, Texas in January 2001. The BWC also argued that it was anticipated that Wasinski's counsel would argue that the conditions that, Wasinski was seeking to participate in the benefits of the workers' compensation fund, were caused by a concussion or loss of consciousness at the accident scene. However, the BWC alleged that these claims and/or theories of causation have been denied and never appealed and therefore "[t]hat claim, diagnosis, mechanism of injury and/or description of injury is barred by res judicata and collateral estoppel." Finally, the BWC argued that no expert has described, diagnosed, or causally related a concussion or loss of consciousness to the alleged condition or the mechanism of injury for the industrial injury.

**{¶77}** On February 8, 2008 the trial court issued an Order granting the BWC's motions in limine as related to the prohibition of any evidence or argument alleging a "loss of consciousness," "concussion" and "post-concussion syndrome." In its Order, the trial court specifically referred to these motions in limine as "Branches 4&5" and granted said motions "based on the doctrine of res judicata and collateral estoppel."

**{¶78}** Our review of the record reveals that on February 11, 2008 Wasinski filed a notice of filing with the trial court which included a copy of the Industrial

Case No. 3-08-14 and 3-08-16

Commission's Record of Proceedings, as typed May 30, 2001. This Record of

Proceedings provides, in relevant part, as follows:

> **The order of the District Hearing Officer, from the hearing dated 04/17/2001 is affirmed.**
>
> **The claim remains allowed for the following conditions: contusion to scalp and left knee; cervicothoracic strain; lumbosacral strain.**
>
> **The claim remains specifically disallowed for "post-concussion syndrome." \*\*\* Claimant was injured in a motor vehicle accident was on business, out-of-state, on 1/20/2001. No treatment was rendered at the scene or on the date of injury. The claimant testified she lost consciousness following or during the accident but there is no contemporaneous medical evidence to verify that statement. \*\*\* The Staff Hearing Officer finds the medical evidence is not persuasive on which to allow the post concussion syndrome. \*\*\* He [Dr. Baddour] does not diagnose post-concussive syndrome. Dr. Kellum notes claimant has ailments of post-concussive syndrome but he does not specifically relate this to the motor vehicle accident.**

{¶79} Our review of the record reveals that the Industrial Commission

denied Wasinski's claimed medical condition of post-concussion syndrome

because there was no contemporary evidence presented regarding a loss of

consciousness at the scene of the January 21, 2001 motor vehicle accident. Our

review of the record also reveals that Wasinski did not appeal the Industrial

Commission's May 30, 2001 decision to the court of common pleas as required or

allowed under R.C. 4123.512.

{¶80} Additionally, it appears that Wasinski does not attempt to re-litigate the May 30, 2001 decision and factual findings of the Industrial Commission until 2008, and it appears that Wasinski attempts to do so without any medical testimony contained in the record formally diagnosing her with a concussion. Furthermore, we note that the facts surrounding Wasinski's medical condition as specifically related to suffering from a concussion, or post-concussive syndrome have not changed between the January 20, 2001 motor vehicle accident and the trial court's finding that the issues of "concussion" and "loss of consciousness" were barred by the doctrine of res judicata and collateral estoppel.

{¶81} Based on the foregoing, we find that the trial court did not err or abuse its discretion in determining that the issues of "concussion" and "loss of consciousness" were barred by the doctrine of res judicata and collateral estoppel. Moreover, the trial court's decision not to allow these issues to become the basis for separate claims before the jury is distinguishable from the trial court's decision not to require the terms "concussion" and "loss of consciousness" to be redacted from medical records that were testified to and introduced in support of entirely different claims as discussed in the BWC's third assignment of error. Accordingly, Wasinski's tenth assignment of error is overruled.

{¶82} Based on the foregoing, the BWC's assignments of error one through four are overruled in their entirety. Therefore, Wasinski's assignments of

error one through five are rendered moot. Additionally, as Wasinski's assignments of error six through nine and eleven have been withdrawn, they are also rendered moot. Finally, Wasinski's assignment of error ten is overruled.

{¶83} Accordingly, the Judgment Entries of the Court of Common Pleas, Crawford County, Ohio are affirmed.

*Judgments Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concurs.**

**/jlr**