OPINION
{¶ 1} Plaintiff-Appellant, Tommie V. Hickle, appeals the judgment of the Seneca County Court of Common Pleas, denying him the right to participate in the workers' compensation fund for the conditions of spinal stenosis, degeneration lumbosacral intervertebral disc, post-traumatic arthropathy lumbar spine, post-laminectomy syndrome, and L5-S1 radiculopathy (hereinafter collectively referred to as "the additional conditions"). On appeal, Hickle asserts that the trial court erred in denying his motion for a directed verdict regarding the degenerative lumbosacral intervertebral disc condition; that the trial court committed prejudicial error in denying his motion in limine and permitting the medical expert of Defendant-Appellee, the Administrator, Bureau of Workers' Compensation (hereinafter referred to as "the Bureau") to testify; and, that the trial court erred in not submitting his proposed interrogatories to the jury. Based on the following, *Page 3 
we affirm in part, reverse in part, and remand the judgment of the trial court for further proceedings consistent with this opinion.
 {¶ 2} In June 1984, while employed with Defendant-Appellee, Hayes-Albion Corporation,[1] Hickle sustained injuries when a ladder he was working from broke. Hickle filed a claim with the Industrial Commission (hereinafter referred to as "the Commission"), requesting workers' compensation benefits for the conditions of abrasions right elbow and left back, left groin pull, fracture transverse process L-2, L4-5 disc herniation, and lumbar disc disease, all of which the Commission allowed.
 {¶ 3} In September 1989, Hickle underwent surgery for the L4-5 disc herniation, which the Bureau allowed.
 {¶ 4} In November 2002, Hickle filed another claim with the Commission, seeking to receive workers' compensation benefits for the additional conditions. The Commission denied all of the additional conditions in Hickle's claim, as well as his subsequent administrative appeals.
 {¶ 5} In September 2003, Hickle appealed the denial of his claim to the trial court pursuant to R.C. 4123.512.
 {¶ 6} In October 2004, Hickle voluntarily dismissed his appeal, without prejudice. *Page 4 
 {¶ 7} In October 2005, Hickle refiled his appeal to the trial court.
 {¶ 8} In June 2006, a jury trial commenced on Hickle's case. Before the start of the trial, Hickle filed a motion in limine to exclude the testimony of the Bureau's expert witness, Dr. Karl Kumler, which the trial court overruled. During the trial, the following testimony was adduced.
 {¶ 9} Hickle testified that, prior to his June 1984 fall, he had injured his back and received treatment, but not surgery. Hickle also acknowledged that, after his surgery in 1989, he had fallen from a tree stand while hunting.
 {¶ 10} Dr. Donato Borrillo, Hickle's medical expert, testified and concluded that Hickle's back injuries from the 1984 fall and his subsequent surgery proximately caused the additional conditions. Dr. Borrillo explained that the lumbar region of the spine consisted of five vertebra and that Hickle's injuries from his 1984 fall included a fracture in his L2 vertebra, a herniated L4-5 disc, and lumbar disc disease.
 {¶ 11} Regarding disc degeneration in general, Dr. Borrillo testified that it can occur naturally or as a result of trauma or surgery. Specifically, Dr. Borrillo stated that degeneration of the lumbosacral intervertebral disc referred to deterioration and scarring of the L4-5 region and surrounding area.
 {¶ 12} Regarding post-laminectomy syndrome, Dr. Borrillo testified that Hickle's surgery for his herniated disc at L4-5 was a laminectomy; that post-laminectomy *Page 5 
syndrome means that, despite the surgery, the pain returned; that the only time one hears of post-surgical syndromes is after a back surgery; and, that post-laminectomy syndrome was a legitimate diagnosis.
 {¶ 13} On cross-examination, Dr. Borrillo acknowledged that degeneration of the lumbasacral intervertebral disc can occur naturally and that no specific test exists to determine post-laminectomy syndrome because its diagnosis is based on several components, including the laminectomy, the return of discomfort, and EMG and MRI results.
 {¶ 14} Dr. Kumler, the Bureau's medical expert, testified via videotape and concluded that Hickle's back injuries from the 1984 fall did not proximately cause or aggravate his degeneration of the lumbosacral intervertebral disc, post-traumatic arthropathy lumbar spine, spinal stenosis, post-laminectomy syndrome, or L5-S1 radiculopathy.[2] Dr. Kumler also noted that Hickle had a history of back problems prior to the 1984 fall and that he had a congenitally small spinal canal at L3-4.
 {¶ 15} Regarding disc degeneration in general, Dr. Kumler testified that it results from the natural aging process. Regarding post-laminectomy syndrome in general, Dr. Kumler explained that a laminectomy is an operation and that post-laminectomy syndrome is a general term used for people who continue to have *Page 6 
pain after a laminectomy, but that no cause of the recurring pain, such as a reherniation or an infection, can be found. Specifically, Dr. Kumler testified that "the need for [Hickle's] laminectomy had nothing to do with the [1984] fall. So that laminectomy syndrome had nothing to do with the [1984] fall." (Videotape Tr., p. 36).
 {¶ 16} On cross-examination, the following exchange occurred:
 Hickle's counsel: And [Dr. Kumler], as I understand it, you testified that the lumbar disc surgery was not related to this injury, correct?
 Dr. Kumler: Correct.
 Hickle's counsel: And you testified that the lumbar disc disease is not related to this injury, correct?
 Dr. Kumler: Correct.
(Videotape Tr., p. 46). Additionally, Dr. Kumler testified that degenerative disc disease and disc degeneration are synonymous and that lumbar disc disease is a degeneration of the disc and is not related to one episode.
 {¶ 17} At the close of the evidence, Hickle moved for a directed verdict regarding the condition of degenerative lumbosacral intervertebral disc, which the trial court denied. Additionally, Hickle requested that Dr. Kumler's testimony be stricken from the record, which the trial court also denied, explaining:
 I have not, to the Court's satisfaction, found where [Dr. Kumler] * * * indicated that the allowed conditions are not proper other than on page 46.
 * * *
 That's the only place I really found it. I'm gonna overrule the Motion to Exclude Dr. Kumler's, uhm, testimony in this case. A *Page 7 review of the testimony of Dr. Kumler in total indicates that his opinion is not entirely based upon a denial of the allowed conditions and, therefore, the Court is going to allow it for whatever assistance it may be to the jury.
(Trial Tr., Vol. II, p. 298).
 {¶ 18} Subsequently, Hickle submitted proposed jury interrogatories, which asked whether he had sustained the condition of post-traumatic laminectomy syndrome as a proximate result of his "allowed herniated L4-5 decompression disc surgery" and whether he had sustained each of the remaining conditions as a proximate result of his "allowed herniated L4-5 decompression disc surgery and/or his allowed lumbar disc disease." (Hickle Proposed Jury Interrogatories, pp. 2-6). Instead, over the objections of both Hickle and the Bureau,[3] the trial court submitted interrogatories to the jury that asked whether Hickle sustained the condition of post-traumatic laminectomy syndrome as a proximate result of his "allowed L4-5 disc herniation" and whether he sustained each of the remaining conditions as a proximate result of his "allowed L4-5 disc herniation and/or his allowed lumbar disc disease." (June 2006 Judgment Entry, pp. 3-7). In doing so, the trial court explained that it was proceeding with the jury interrogatories "as written in this matter as a compromise of some sort between the [Bureau and Hickle] in this case." (Trial Tr., Vol. II, p. 304). *Page 8 
 {¶ 19} Thereafter, the jury rendered its verdict, finding that Hickle was not entitled to receive benefits for any of the additional conditions in his claim. {¶ 20} It is from this judgment that Hickle appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED IN DENYING PLAINTIFF/APPELLANT'S MOTION FOR A DIRECTED VERDICT AS TO THE MEDICAL CONDITION OF DEGENERATIVE LUMBOSACRAL INTERVERTEBRAL DISC.
 Assignment of Error No. II THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING PLAINTIFF/APPELLANT'S MOTION IN LIMINE AND PERMITTING INTO EVIDENCE THE TESTIMONY OF DEFENDANT/APPELLEE'S MEDICAL EXPERT.
 Assignment of Error No. III THE TRIAL COURT ERRED IN NOT SUBMITTING TO THE JURY PLAINTIFF/APPELLANT'S PROPOSED INTERROGATORIES TO THE JURY IN VIOLATION OF CIVIL RULE 49(B).
 {¶ 21} The following standard of review applies throughout.
 Standard of Review {¶ 22} An appeal from the Commission to a trial court under R.C.4123.512 regarding a claimant's right to participate in the workers' compensation scheme is a de novo determination of matters of law and fact. Oswald v. Connor (1985), *Page 9 16 Ohio St.3d 38, 42, citing Swanton v. Stringer (1975), 42 Ohio St.2d 356,359; Wyatt v. Autozone, Inc., 3d Dist. No. 15-03-05, 2003-Ohio-6706, ¶ 7. As such, the Civil Rules apply and the trial court must disregard the Commission's decision and rationale. Snyder v. Ford Motor Co., 3d Dist. No. 1-05-41, 2005-Ohio-6415, ¶ 30; Wyatt, 2003-Ohio-6706 at ¶ 7.
 {¶ 23} Upon further appeal, review of the trial court's decision is limited, and "`[i]f the evidence before that [trial] court is sufficient to support the result reached, [the reviewing] court will not substitute its judgment.'" Oswald, 16 Ohio St.3d at 42, quoting Swanton,42 Ohio St.2d at 359; Iiams v. Corporate Support, Inc. (1994),98 Ohio App.3d 477, 480-81.
 Assignment of Error No. I {¶ 24} In his first assignment of error, Hickle contends that the trial court erred in denying his motion for a directed verdict regarding the condition of degenerative lumbosacral intervertebral disc. Specifically, Hickle asserts that the testimony at trial, particularly that of Dr. Kumler, showed that the condition of degenerative lumbosacral intervertebral disc is synonymous with the already allowed condition of lumbar disc disease and that, as such, no dispute existed for the jury to decide. We disagree.
 {¶ 25} A trial court may grant a motion for a directed verdict if, after construing the evidence most strongly in favor of the party opposing the motion, *Page 10 
the trial court finds that reasonable minds "could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Burns v. Prudential Securities, Inc.,167 Ohio App.3d at 809, 823, citing Crawford v. Halkovics (1982), 1 Ohio St.3d 184, 185-86; Civ.R. 50(A)(4). A directed verdict is appropriate when the opposing party has failed to adduce any evidence on the essential elements of the claim. Cooper v. Grace Baptist Church (1992), 81 Ohio App.3d 728, 734. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury and constitutes a question of law. Burns, 167 Ohio App.3d at 823, citing Hargrove v.Tanner (1990), 66 Ohio App.3d 693, 695. A reviewing court evaluates a trial court's ruling on a motion for directed verdict de novo.Burns, 167 Ohio App.3d at 823, citing McConnell v. Hunt SportsEnts. (1999), 132 Ohio App.3d 657, 686-87.
 {¶ 26} Here, Hickle argues that the trial court should have granted his motion for a directed verdict on the condition of degenerative lumbosacral intervertebral disc because it is synonymous with the already allowed condition of lumbar disc disease. However, a close review of the record suggests that the condition of degenerative lumbosacral intervertebral disc is distinct from the condition of lumbar disc disease. First, Hickle's emphasis on Dr. Kumler's testimony that degenerative disc disease and disc degeneration are synonymous is unpersuasive because Dr. Kumler merely acknowledged two ways to phrase the *Page 11 
concept of degeneration and made no reference to either degenerative lumbosacral intervertebral disc or lumbar disc disease in doing so.
 {¶ 27} Second, Hickle's emphasis on Dr. Kumler's testimony that lumbar disc disease is a degeneration of the disc, while more persuasive, also lacks merit, particularly in light of Dr. Borrillo's testimony. Dr. Borillo explained that the lumbar spine consisted of five vertebra, but that degeneration of the lumbosacral intervertebral disc specifically referred to deterioration and scarring of the L4-5 area. Conversely, Dr. Kumler's statement that lumbar disc disease is a degeneration of the disc did not refer to any particular lumbar disc or region. Thus, lumbar disc disease could presumably occur as the result of degeneration in any of the lumbar discs or regions, while degenerative lumbosacral intervertebral disc occurs only in the lumbosacral, or L4-5, area. As such, whether Hickle's June 1984 injuries proximately caused his condition of degenerative lumbosacral intervertebral disc was a question properly left up to the jury because reasonable minds could have reached differing conclusions given the conflicting expert testimony regarding whether Hickle's 1984 injury or natural deterioration caused that condition. Thus, we find that the trial court did not err by denying Hickle's motion for a directed verdict.
 {¶ 28} Moreover, even if degenerative lumbosacral intervertebral disc is the same as lumbar disc disease, the trial court appropriately denied Hickle's motion *Page 12 
for a directed verdict. Assuming these two conditions are the same, Hickle's additional claim for the condition of degenerative lumbosacral intervertebral disc should have been dismissed on res judicata or collateral estoppel grounds because the Commission had already allowed Hickle's original claim for lumbar disc disease decades earlier.
 {¶ 29} Accordingly, we overrule Hickle's first assignment of error.
 Assignment of Error No. II {¶ 30} In his second assignment of error, Hickle contends that the trial court committed prejudicial error in denying his motion in limine to exclude Dr. Kumler's testimony. Specifically, Hickle asserts that Dr. Kumler refused to accept that Hickle's undisputed, allowed 1989 surgery was related to the undisputed, allowed conditions of lumbar disc disease and L4-5 disc herniation, as he was required to do. We agree.
 {¶ 31} Decisions regarding the admissibility of evidence, including motions in limine and expert testimony, are within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. State v. Yohey (1996), 3d Dist. No. 9-95-46,1996 WL 116144, referencing State v. Graham (1979), 58 Ohio St.2d 350 andState v. Lundy (1987), 41 Ohio App.3d 163; Colboch v. Uniroyal Tire Co.,Inc. (1996), 108 Ohio App.3d 448, 461. An abuse of discretion "connotes more than an error of law or judgment; it implies that the *Page 13 
court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. However, "even where a trial court abuses its discretion in the admission of evidence," a reviewing court will not reverse unless the error affected a substantial right of the party at issue. State v. Lundgren (1995),73 Ohio St.3d 474, 486; Evid.R. 103(A); Civ.R. 61.
 {¶ 32} "`In order to establish a right to workmen's compensation for harm or disability claimed to have resulted from an accidental injury, it is necessary for the claimant to show by a preponderance of the evidence, medical or otherwise, not only that his injury arose out of and in the course of his employment, but that a direct and proximate causal relationship existed between his injury and his harm or disability.'" Cook v. Mayfield (1989), 45 Ohio St.3d 200, 204, quotingFox v. Indus. Comm. (1955), 162 Ohio St. 569, paragraph one of the syllabus; see, also, Stevens v. Harsco Corp. (1995),101 Ohio App.3d 164, 167. The causal relationship is determined by a totality of the circumstances. Stevens, 101 Ohio App.3d at 167, citing Lord v.Daugherty (1981), 66 Ohio St.2d 441, syllabus.
 {¶ 33} In the case sub judice, Hickle argues that Dr. Kumler was required to accept that Hickle's surgery stemmed from his 1984 L4-5 disc herniation and lumbar disc disease conditions and that Dr. Kumler's refusal to do so prejudiced him. In light of the principles of res judicata and collateral estoppel, Dr. Kumler was required to accept that Hickle's surgery stemmed from his allowed 1984 back *Page 14 
injuries. The doctrines of res judicata and collateral estoppel "preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction," Vectren Energy Delivery of Ohio, Inc.v. Pub. Util. Comm., 113 Ohio St.3d 180, 186, 2006-Ohio-1386, and apply to workers' compensation proceedings before the Commission. State exrel. Kroger Co. v. Industrial Commission of Ohio (1998),80 Ohio St. 3d 649, 652.
 {¶ 34} Here, the Commission allowed Hickle to receive benefits for his 1984 L4-5 disc herniation and lumbar disc disease conditions, as well as for his subsequent 1989 surgery on his L4-5 disc, from which no appeal was taken. As such, Dr. Kumler was barred under res judicata principles from testifying that Hickle's surgery had nothing to do with his previous allowed conditions and that his lumbar disc disease could not arise from a single event, namely the 1984 fall. Thus, we find that the trial court abused its discretion in allowing Dr. Kumler to testify to the contrary.
 {¶ 35} Moreover, we find that the trial court's abuse of discretion in allowing Dr. Kumler's testimony affected a substantial right of Hickle. The crux of Hickle's case was that his additional conditions were proximately caused by his previous allowed L4-5 disc herniation and lumbar disc disease conditions, as well as his subsequent surgery. Dr. Kumler's testimony that Hickle's surgery "had *Page 15 
nothing to do with" his 1984 injuries and that lumbar disc disease is not related to one episode, if believed by the jury, invalidates Hickle's entire case. Although we acknowledge that only a small portion of Dr. Kumler's testimony was barred by res judicata and that other testimony existed in the record to support the jury's verdict, there is no way to determine the extent to which Dr. Kumler's improper testimony impacted the jury's verdict. Thus, we find that the trial court abused its discretion and prejudiced Hickle by allowing that portion of Dr. Kumler's improper testimony into evidence.
 {¶ 36} Accordingly, we sustain Hickle's second assignment of error.
 Assignment of Error No. III {¶ 37} In his third assignment of error, Hickle contends that the trial court erred in not submitting his proposed interrogatories to the jury in violation of Civ.R. 49(B). Based on our disposition of Hickle's second assignment of error, Hickle's third assignment of error is rendered moot and, accordingly, we decline to address it. App.R. 12(A)(1)(c).
 {¶ 38} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued in his first assignment of error, but having found error prejudicial to the appellant herein, in the particulars assigned and argued in *Page 16 
his second assignment of error, we affirm in part, reverse in part, and remand the judgment of the trial court for a new trial pursuant to Civ.R. 59(A)(1).
Judgment affirmed in part, reversed in part, and cause remanded.
SHAW and WILLAMOWSKI, JJ., concur.
[1] Hayes-Albion Corporation went out of business during the mid-1980s and, therefore, did not participate in any of the litigation, including this appeal.
[2] Hickle renewed his motion to exclude Dr. Kumler's testimony prior to the Bureau's introduction of it, which the trial court overruled.
[3] The Bureau alleged that the jury interrogatories were biased in favor of Hickle and asserted that they should only have asked whether Hickle's conditions were "a proximate result of his injuries he received from the June 22, 1984 accident." (Trial Tr., Vol. II, p. 301). *Page 1