[Cite as *Welly v. Welly*, 2015-Ohio-4804.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

JEFFREY R. WELLY,

    PLAINTIFF-APPELLANT,           CASE NO. 13-15-15

    v.

THERESA J. WELLY,               O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Seneca County Common Pleas Court
Domestic Relations Division
Trial Court No. 07-DR-0099

**Judgment Affirmed**

Date of Decision:    November 23, 2015

**APPEARANCES:**

    *Charles R. Hall, Jr.* for Appellant

    *Harold M. Hanna* for Appellee

**PRESTON, J.**

{**¶1**} Plaintiff-appellant, Jeffrey R. Welly ("Jeffrey"), appeals the April 9, 2015 judgment entry of the Seneca County Court of Common Pleas, Domestic Relations Division, concluding that the increase in net value of two hog barns during the marriage is marital property and ordering Jeffrey to pay defendant-appellee, Theresa J. Welly ("Theresa"), "the sum of $174,660.00 as an equitable, equal division of the parties' marital property interest in the Hog Barns." For the reasons that follow, we affirm.

{**¶2**} The trial court issued a judgment entry of divorce on February 9, 2011. (Doc. No. 395). In it, the trial court stated, "It is ORDERED that the Hog Barns are premarital property and is [sic] the Plaintiff's separate property, and is hereby awarded to the Plaintiff." (*Id.*). Neither party appealed that judgment entry.

{**¶3**} After the trial court filed its February 9, 2011 judgment entry, Theresa hired new counsel who, two weeks later, filed a "motion to modify judgment or for a new trial." (Doc. No. 396). Among other things, Theresa argued that the trial court failed to remedy deficiencies that this court identified in dismissing a previous, 2008 appeal in this case, Third District Court of Appeals case No. 13-08-45, concerning the valuation and division of the hog barns. (*Id.*). On February 28 and March 7, 2011, Jeffrey filed a memorandum in opposition to and Theresa filed

a reply memorandum in support of Theresa's "motion to modify judgment or for a new trial," respectively. (Doc. Nos. 399, 400). On March 30, 2011, the trial court filed an entry concerning Theresa's "motion to modify judgment or for a new trial" and "grant[ed] a hearing on the limited issues [sic] of the 'hog barns.'" (Doc. No. 406).

{¶4} On June 1, 2012, Jeffrey filed a "motion to dismiss the pending hog barn issue for failure to prosecute." (Doc. No. 475). In that motion, Jeffrey argued that the trial court should "dismiss the pending issue of the 'hog barns'" under Civ.R. 37(B)(2)(c) and 41(B)(1). (*Id.*). Theresa filed her memorandum in opposition to Jeffrey's motion on June 12, 2012. (Doc. No. 477). On August 30, 2012, the trial court denied Jeffrey's motion to dismiss. (Doc. No. 491).

{¶5} On August 25, 2014, Jeffrey filed two motions. The first was a "motion to dismiss defendant's motion for new trial for hog barns." (Doc. No. 557). In it, Jeffrey argued—as he did in his February 28, 2011 memorandum in opposition to Theresa's "motion to modify judgment or for a new trial"—that Theresa's disagreement with the trial court's property division in the February 9, 2011 judgment entry of divorce is not a valid ground for granting a motion for a new trial. (*Id.*). Jeffrey also argued in that motion that the trial court lacked jurisdiction to modify the property division in its February 9, 2011 judgment entry of divorce. (*Id.*). Jeffrey's other August 25, 2014 motion was a "motion in limine

regarding the defendant's expert witness and exhibits for 'hog barns' and request hearing [sic]." (Doc. No. 558). Jeffrey argued that the trial court should preclude Theresa from relying on her appraiser, Robert C. Hunt ("Hunt"), at the hearing because Hunt "failed to provide during his deposition any verifiable reliable, scientific, technical, or other specialized information that would relate this [sic] matter." (*Id.* at 3). Jeffrey requested a hearing concerning his motion in limine. (*Id.* at 5).

{¶6} On August 29, 2014, Theresa filed a "response to plaintiff's motion to dismiss" and a "response to plaintiff's motion in limine." (Doc. Nos. 560, 561).

{¶7} On September 3, 2014, the trial court filed an entry denying Jeffrey's August 25, 2014 motion to dismiss and motion in limine. (Doc. No. 563). Concerning Jeffrey's motion in limine, the trial court stated, "The Defendant retained an expert and said expert is qualified and ready to testify at the September 8, 2014 [sic]. The Court will permit Robert C. Hunt to testify as an expert witness in this matter." (*Id.* at 2).

{¶8} A hearing before a magistrate was held on September 8, 2014 concerning "the limited issue of hog barns." (Sept. 8, 2014 Tr. at 5).

{¶9} The magistrate filed her decision on October 22, 2014. (Doc. No. 570). In it, the magistrate concluded that "[t]he increase in net value of the hog barns * * * is marital property" and recommended that the trial court award

Theresa "an equitable share of the marital property interest in the Hog Barns in the amount of $174,660.00." (*Id.* at 9, 14).

**{¶10}** On October 31, 2014, Jeffrey filed objections to the magistrate's decision, followed, on December 11, 2014 with leave of court, by a supplemental memorandum in support of his objections. (Doc. Nos. 573, 578). Theresa filed responses to Jeffrey's objections on November 17, 2014 and December 22, 2014. (Doc. Nos. 576, 581).

**{¶11}** On February 11, 2015, the trial court filed a judgment entry overruling Jeffrey's objections and "affirm[ing]" the magistrate's decision "in its entirety." (Doc. No. 582).

**{¶12}** On March 6, 2015, Jeffrey filed a notice of appeal of the trial court's February 11, 2015 judgment entry. (Doc. No. 583).

**{¶13}** On March 20, 2015, we dismissed Jeffrey's appeal, Third District Court of Appeals case No. 13-15-05, for lack of a final order because, by simply adopting the magistrate's decision, the February 11, 2015 judgment entry did not comply with the trial court's obligation to enter its own, independent judgment determining the action.

**{¶14}** On April 9, 2015, the trial court issued the judgment entry that is the subject of this appeal. (Doc. No. 586). In that entry, the trial court stated that "the divorce was final as of February 9, 2011" because neither party appealed the trial

court's February 9, 2011 judgment entry of divorce. (*Id.* at 2). The trial court concluded that the increase in net value of the hog barns during the marriage is marital property and ordered, "The Plaintiff shall pay the Defendant the sum of $174,660.00 as an equitable, equal division of the parties' marital property interest in the Hog Barns." (*Id.* at 9).

{¶15} On May 1, 2015, Jeffrey filed his notice of appeal of the trial court's April 9, 2015 judgment entry. (Doc. No. 590). He raises nine assignments of error. We will first address together Jeffrey's first, second, third, and seventh assignments of error, followed by his fourth and fifth assignments of error together, followed by his sixth and eighth assignments of error together, followed by his ninth assignment of error.

### Assignment of Error No. I

**The trial court improperly granted the Appellee's Motion for New Trail [sic].**

### Assignment of Error No. II

**The Trial Court lacked the jurisdiction to make changes to its own judgment entry.**

### Assignment of Error No. III

**The Trail [sic] Court failed to provide an adequate basis for the new trial.**

**Assignment of Error No. VII**

**The Trial Court's April 9, 2015 Judgment Entry is not a Final Appealable Order.**

{¶16} In his first and third assignments of error, Jeffrey argues that the trial court erred by granting Theresa's motion for a new trial because Theresa failed to demonstrate, and the trial court failed to specify, any of the grounds for a new trial listed in Civ.R. 59(A). In his second assignment of error, Jeffrey argues that, because the trial court's February 9, 2011 judgment is a final judgment, "[t]he trial court lacked jurisdiction to make substantive changes to the property division in its February 9, 2011 judgment entry" and that "the Appellee's request to modify or to change the February 9, 2011 judgment its [sic] original property division would be void and would have no legal effect." (Appellant's Brief at 7). Jeffrey similarly argues in his seventh assignment of error that the trial court's February 9, 2011 judgment entry "was the final appealable order in this matter" and that "the April 9, 2015 judgment that modified the original property division are [sic] void and have [sic] no legal effect" because "[t]he trial court lacked the jurisdiction to modify its original judgment and property division." (*Id.* at 12).

{¶17} We conclude that Jeffrey waived any error that could have been raised regarding the trial court's March 30, 2011 judgment entry granting in part Theresa's motion for a new trial. "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order

that * * * grants a new trial." R.C. 2505.02(B)(3). *See also Utz v. Stovall*, 11th Dist. Portage No. 2012-P-0135, 2013-Ohio-4299, ¶ 57 ("An order that * * * grants a new trial is a final, appealable order under R.C. 2505.02(B)(3)."). If a party wishes to challenge a trial court's order granting a new trial, it must appeal the order within 30 days of its entry. *See* App.R. 4(A)(1), (B)(2). *See also Kahler v. Capehart*, 3d Dist. Seneca No. 13-03-55, 2004-Ohio-2224, ¶ 7, citing R.C. 2505.02(B)(3) and App.R. 4(A). "'Failure to appeal a final appealable order waives any error that could have been raised with respect to that order.'" *Michel v. Michel*, 7th Dist. Noble No. 10 NO 376, 2012-Ohio-4037, ¶ 19, quoting *In re Mapley*, 7th Dist. Mahoning No. 07 MA 36, 2008-Ohio-1180, ¶ 9. *See also Kahler* at ¶ 7.

**{¶18}** In this case, the trial court's March 30, 2011 judgment entry granting in part Theresa's motion for a new trial was a final appealable order. R.C. 2505.02(B)(3); *Utz* at ¶ 57. Jeffrey failed to appeal that judgment entry within 30 days of its entry. Therefore, he waived any error that could have been raised regarding the trial court's March 30, 2011 judgment entry, and we lack jurisdiction to address Jeffrey's arguments—raised in his first and third assignments of error— regarding the trial court's granting a new trial concerning the issue of the hog barns. *See Michel* at ¶ 19; *Kahler* at ¶ 7, citing *Bellamy v. Bellamy*, 110 Ohio App.3d 576, 580 (6th Dist.1996).

{¶19} In his second and seventh assignments of error, Jeffrey challenges the trial court's jurisdiction to enter the April 9, 2015 judgment entry, arguing that the February 9, 2011 judgment entry of divorce is the controlling judgment in this case concerning division of property. Civ.R. 59(A) provides, "On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment." *See Wolf-Sabatino v. Sabatino*, 10th Dist. Franklin No. 12AP-307, 2012-Ohio-6232, ¶ 12. Because the trial court opened the February 9, 2011 judgment by granting in part Theresa's motion for a new trial, the trial court was free, under Civ.R. 59, to "take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment." Therefore, Jeffrey's arguments that the trial court lacked jurisdiction to enter the April 9, 2015 judgment are without merit. *See Moffett v. Moffett*, 7th Dist. Columbiana No. 87-C-27, 1988 WL 34625, *2 (Mar. 21, 1988).

{¶20} Jeffrey's first, second, third, and seventh assignments of error are overruled.

## Assignment of Error No. IV

**The Trial Court erred in accepting the Appellee's appraisal without prior hearing.**

**Assignment of Error No. V**

**The Trial Court erred in finding the Appellee's witness as an expert without prior hearing.**

{¶21} In his fourth and fifth assignments of error, Jeffrey argues that the trial court abused its discretion by qualifying Theresa's valuation witness, Hunt, as an expert and admitting Hunt's appraisal report because Jeffrey "requested a hearing on the matter and was improperly denied a hearing." (Appellant's Brief at 9).

{¶22} The qualification of a witness as an expert and the admissibility of an expert witness's testimony are distinct inquiries, but both are governed by Evid.R. 702, which provides:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the

testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

*Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 17.

**{¶23}** "The determination of whether a witness is qualified to testify as an expert lies within the sound discretion of the trial court." *Radford v. Monfort*, 3d Dist. Mercer No. 10-04-08, 2004-Ohio-4702, ¶ 5, citing *Bishop v. Ohio Bur. of Workers' Comp.*, 146 Ohio App.3d 772, 781 (10th Dist.2001). Similarly, "any decision concerning the admission or exclusion of expert testimony will not be disturbed absent an abuse of discretion." *Wasinski v. PECO II, Inc.*, 3d Dist. Crawford Nos. 3-08-14 and 3-08-16, 2009-Ohio-2615, ¶ 38, citing *State v. Jones*, 90 Ohio St.3d 403, 414 (2000). An abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "However, 'even where a trial court

abuses its discretion in the admission of evidence,' a reviewing court will not reverse unless the error affected a substantial right of the party at issue." *Hickle v. Hayes-Albion Corp.*, 3d Dist. Seneca No. 13-06-24, 2007-Ohio-4236, ¶ 31, citing *State v. Lundgren*, 73 Ohio St.3d 474, 486 (1995), Evid.R. 103(A), and Civ.R. 61. In that scenario, the error is harmless. *See* Civ.R. 61.

{¶24} Here, Jeffrey filed an August 25, 2015 motion in limine seeking to exclude Hunt's expert testimony and requesting a hearing concerning the motion. (Doc. No. 558). In its September 3, 2014 entry denying Jeffrey's motion, the trial court qualified Hunt as an expert witness and stated that Hunt would be allowed to testify as an expert witness. (Doc. No. 563). The trial court denied Jeffrey's request for a separate hearing concerning his motion in limine, but at the September 8, 2014 hearing before a magistrate, Hunt testified on direct examination concerning his qualifications and his opinions regarding the value of the hog barns. (*See* Sept. 8, 2015 Tr. at 52-73). Jeffrey's counsel had the opportunity to cross-examine Hunt concerning his qualifications and his opinions regarding the value of the hog barns. (*See id.* at 73-80).

{¶25} Under his fourth and fifth assignments of error, Jeffrey does not challenge Hunt's September 8, 2014 testimony concerning his qualifications and his opinions regarding the value of the hog barns. Rather, Jeffrey's arguments under these assignments of error are based on his contention that, because "Hunt

failed to provide during his deposition any verifiable reliable, scientific, technical, or other specialized information that would relate to this matter," the trial court erred by qualifying Hunt as an expert and by admitting his appraisal report without holding a separate, prior hearing. (Appellant's Brief at 10).

{¶26} A trial court has discretion concerning whether to hold a hearing on a motion in limine to exclude the testimony of a proposed expert witness under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).[1] *Sliwinski v. St. Edwards*, 9th Dist. Summit No. 27247, 2014-Ohio-4655, ¶ 15; *Preston v. All Vinyl Fence & Decks, Inc.*, 11th Dist. Trumbull No. 2008-T-0015, 2008-Ohio-6997, ¶ 26, 33; *State v. Shalash*, 12th Dist. Warren No. CA2013-06-052, 2014-Ohio-2584, ¶ 42. "It is well established that a decision on a motion in limine is a 'tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context.'" *Wasinski*, 2009-Ohio-2615, at ¶ 52, quoting *State v. Geboy*, 145 Ohio St.3d 706, 726 (2001). "'An appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial.'"

---

[1] "The United States Supreme Court in *Daubert* * * * interpreted Fed.R.Evid. 702, the federal version of Evid.R. 702, as vesting the trial court with the role of gatekeeper. This gatekeeping function imposes an obligation upon a trial court to assess both the reliability of an expert's methodology and the relevance of any testimony offered before permitting the expert to testify. [The Supreme Court of Ohio] adopted this role for Ohio trial judges in *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735." (Citations omitted.) *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, ¶ 24.

(Emphasis deleted.) *Gollihue v. Consol. Rail Corp.*, 120 Ohio App.3d 378, 388 (3d Dist.1997), quoting *State v. Grubb*, 28 Ohio St.3d 199, 203 (1986).

**{¶27}** At the September 8, 2014 hearing, Jeffrey preserved his objection to the trial court's qualification of Hunt as an expert witness and admission of Hunt's appraisal report. (*See* Sept. 8, 2014 Tr. at 64, 148). However, on appeal, Jeffrey does not contest Hunt's testimony at the September 8, 2014 hearing concerning his qualifications and his opinions regarding the value of the hog barns. Instead, Jeffrey bases his arguments on Hunt's deposition testimony, which was taken before the September 8, 2014 hearing. Therefore, even assuming the trial court abused its discretion by sua sponte qualifying Hunt as an expert witness in its September 3, 2014 entry denying Jeffrey's motion in limine, Jeffrey failed on appeal to suggest how the error—in light of Hunt's September 8, 2014 testimony and Jeffrey's counsel's ability to cross-examine Hunt at that hearing—affected a substantial right of Jeffrey's. Indeed, Jeffrey does not dispute that Hunt testified on September 8, 2014 concerning his qualifications and his opinions regarding the value of the hog barns. Nor does he dispute the substance of Hunt's September 8, 2014 testimony. We will not construct an argument for Jeffrey. *See Union Bank Co. v. Lampert*, 3d Dist. Auglaize No. 2-13-32, 2014-Ohio-4427, ¶ 21, citing *Camp v. Star Leasing Co.*, 10th Dist. Franklin No. 11AP-977, 2012-Ohio-3650, ¶ 67 ("It is not the duty of this court to construct legal arguments in support of an

appellant's appeal."). Therefore, we conclude that any error by the trial court in qualifying Hunt as an expert witness or in admitting Hunt's appraisal report is harmless. *See Metro. Life Ins. Co. v. Tomchik*, 134 Ohio App.3d 765, 776 (7th Dist.1999). Moreover, to the extent Jeffrey argues that the trial court abused its discretion or otherwise erred because a trial court must always hold a *Daubert* hearing if requested, we reject his argument because the law does not support it. *Sliwinski* at ¶ 15, citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999).

{¶28} Jeffrey's fourth and fifth assignments of error are overruled.

### Assignment of Error No. VI

**The Appellant provided evidence that the Hog Barns were his separate property.**

### Assignment of Error No. VIII

**The Trial Court improperly gave the Appellee an interest in the Appellant's hog barns.**

{¶29} In Jeffrey's sixth and eighth assignments of error, he argues that the trial court erred by not concluding that the hog barns are his separate property. Specifically, Jeffrey argues that he "built the hog barns in 1997 and 1998 before the parties were married" and that he "provided testimony and tax records to show the traceability of the hog barns being his separate property." (Appellant's Brief at 11, 14). He also argues that Theresa "did not provide how much her suppose [sic]

efforts at the evidentiary hearing increased the value of the property." (*Id.* at 14). Jeffrey does not dispute the value that the trial court placed on the hog barns or the trial court's allocation of property. In response to Jeffrey's arguments, Theresa concedes that the hog barns themselves and the land on which they sit are separate property because Jeffrey owned them before the marriage; however, she argues that the hog barns' increase in value during the marriage is marital property because the parties "repaid at least $349,320 of Hog Barn indebtedness during the marriage" from their joint, marital income and that she "worked in all aspects of their swine finishing business." (Appellee's Brief at 16-17).

{¶30} "In a divorce proceeding, the division of marital and separate property involves a two-step process governed by R.C. 3105.171." *Lotz v. Lotz*, 3d Dist. Auglaize No. 2-14-06, 2014-Ohio-5625, ¶ 11, citing *Forman v. Forman*, 3d Dist. Marion No. 9-13-67, 2014-Ohio-3545, ¶ 13. "First, the trial court must determine whether property is marital or separate property, and, second, the trial court must equitably allocate the marital and separate property." *Id.*, citing *Forman* at ¶ 13. *See also* R.C. 3105.171(B), (D).

{¶31} Jeffrey's arguments under his sixth and eighth assignments of error concern the first step of the two-step process set forth in R.C. 3105.171—the trial court's determination of whether property is marital or separate. Under R.C. 3105.171(A)(3)(a), "marital property" includes:

(i)  All real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage;

(ii)  All interest that either or both of the spouses currently has in any real or personal property * * * and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage * * *.

R.C. 3105.171(A)(3)(a)(i)-(iii).    Under R.C. 3105.171(A)(6)(a), "separate property" includes:

[A]ll real and personal property and any interest in real or personal property that is found by the court to be any of the following:

* * *

(ii)  Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage * * *.

R.C. 3105.171(A)(6)(a)(ii)-(iii). "'Passive income' means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4). The statute also provides, "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

**{¶32}** "The plain language of R.C. 3105.17[1](A)(3)(a)(iii) unambiguously mandates that when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property." (Emphasis deleted.) *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 400 (1998). For example, if separate property increases in value due to the expenditure of marital funds, that increase in value is marital property. *See Scott v. Scott*, 11th Dist. Trumbull No. 2007-T-0059, 2008-Ohio-530, ¶ 21.

**{¶33}** "The party seeking to establish that property is separate rather than marital bears the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-12, 2014-Ohio-5484, ¶ 45, citing *Schalk v. Schalk*, 3d Dist. Seneca No. 13-07-13, 2008-Ohio-829, ¶ 6. *See also Golick v. Golick*, 12th Dist. Clermont Nos. CA99-05-040 and CA99-05-045, 2001 WL 1598290, *9 (Dec. 17, 2001) ("Because [husband-appellant] sought to have the appreciation of the * * * properties characterized as

separate property, he had the burden of proof on this issue by a preponderance of the evidence."), citing *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist.1994).

**{¶34}** "This court reviews the trial court's classification of property as marital or separate under a manifest-weight-of-the-evidence standard." *Lotz*, 2014-Ohio-5625, at ¶ 16, citing *Reed v. Reed*, 3d Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 7. "Accordingly, we will not reverse the trial court's judgment if it is supported by some competent, credible evidence." *Id.*, citing *Reed* at ¶ 7. "'This highly deferential standard of review permits the affirmation of the trial court's judgment if there is even 'some' evidence to support the court's finding.'" *Reed* at ¶ 7, quoting *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, ¶ 15 (3d Dist.).

**{¶35}** In this case, the trial court made the following findings, all of which are supported by some competent, credible evidence. Before the parties married on June 12, 1999, Jeffrey borrowed a total of $300,000.00 to purchase the hog barns. (Doc. No. 586 at 4-5, ¶ 1, 3, 5). Jeffrey purchased the hog barns for a total initial cost of $322,360.00 and later invested at least an additional $16,075.75 in capital improvements to the hog barns. (*Id.* at 5, ¶ 4, 6, 7, 8).

**{¶36}** Following the construction of the hog barns and the parties' marriage on June 12, 1999, Jeffrey and Theresa refinanced the indebtedness when the loans of the hogs barns came due on November 5 and December 30, 2002. (*Id.* at 5, ¶ 9,

10). During the marriage, and before their separation and first divorce hearing in 2008, the parties repaid $349,320.00 of the original and refinanced indebtedness for the hog barns from income derived from their joint operation of their swine finishing business and their employment at Whirlpool. (*Id.* at 5, ¶ 10, 11, 16). Hunt testified that the contributory fair market value of the hog barns as of June 22, 2011 is $342,000.00. (*Id.* at 6, ¶ 13, 14). Jeffrey did not file an appraisal or produce expert-witness testimony concerning the value of the hog barns. (*See id.* at 2-3).

{¶37} Based on these findings, the trial court concluded, "The repayment of Hog Barn indebtedness during the marriage by the parties' joint labor, monetary or in-kind contributions, increased the net value of the Hog Barns by $349,320," making the increase in the hog barns' net value marital property. (*Id.* at 7, ¶ 1, 2). The trial court added that Jeffrey "failed to establish that the increase in the value of the Hog Barns is separate property." (*Id.* at 7, ¶ 3).

{¶38} We conclude that the trial court's classification of $349,320.00 in increased net value of the hog barns as marital property is supported by some competent, credible evidence and therefore not against the manifest weight of the evidence. Jeffrey bore the burden of proving, by a preponderance of the evidence, that the appreciation on his separate property is likewise separate property. While Jeffrey may be able to trace his premarital ownership of the hog barns through the

marriage, as he claims he can, that is not the issue. Rather, the question is whether the hog barns' increase in net value during the marriage is "other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4). *See also* R.C. 3105.171(A)(3)(a)(iii) and 3105.171(A)(6)(a)(iii).

**{¶39}** Jeffrey failed to carry his burden of proving that the increase in net value is other than as a result of the labor, monetary, or in-kind contribution of either spouse. *See Fisher v. Fisher*, 3d Dist. Henry No. 7-01-12, 2002 WL 444904, *10 (Mar. 22, 2002). Theresa, on the other hand, produced evidence—which Jeffrey did not and does not dispute—that the parties, during the marriage, repaid $349,320.00 in indebtedness from the hog barns using joint, marital income from their swine finishing operation and their employment at Whirlpool. (*See* Sept. 8, 2014 Tr. at 85-116, 142-143, 151-154, 156-157); (Defendant's Exs. B, C, D, F, G, H, J, K, L, N, O, P, Q, R, S, T, V, W, Y, Z). Theresa correctly asserts that the parties' increased equity in the hog barns—based on their repaying indebtedness on the hog barns during the marriage using marital funds—is marital property. *See Scott*, 2008-Ohio-530, at ¶ 21, citing R.C. 3105.171(A)(3)(a)(iii) and *Middendorf*, 82 Ohio St.3d at 400; *Ray v. Ray*, 9th Dist. Medina No. 03CA0026-M, 2003-Ohio-6323, ¶ 8, citing *Charles v. Charles*, 9th Dist. Lorain No. 96CA006396, 1997 WL 28247, *4 (Jan. 22, 1997). Presented with Theresa's competent, credible evidence, the trial court concluded that the increase in net

value of the hog barns is $349,320.00 and that this increased equity is marital property because the parties used marital funds to repay the indebtedness. $349,320.00 is near Hunt's appraisal amount of $342,000.00. Therefore, we hold that the trial court's classification of the increase in net value of the hog barns—$349,320.00—as marital property is not against the manifest weight of the evidence.

**{¶40}** Because Jeffrey does not present any argument as to the second step of the property-division process set forth in R.C. 3105.171—namely, equitable allocation of the marital and separate property—we need not address that aspect of the trial court's decision. *See Lakner v. Lakner*, 12th Dist. Butler No. CA97-07-150, 1998 WL 130202, *3-4 (Mar. 23, 1998).

**{¶41}** Jeffrey's sixth and eighth assignments of error are overruled.

### Assignment of Error No. IX

**The Trail [sic] Court abused its discretion not dismissing the Appellee's motions pursuant to Civil Rule 41.**

**{¶42}** In his ninth assignment of error, Jeffrey argues that the trial court erred by not granting his "motion to dismiss the pending Hog Barn issue for failure to prosecute" under Civ.R. 37(B)(2)(c) and 41(B)(1) because Theresa "failed to comply with a court order regarding the discovery cut-off." (Appellant's Brief at 15).

{¶43} Civ.R. 37(B) provides various sanctions for failure to comply with an order to provide or permit discovery, including dismissal of "the action or proceeding or any part thereof." Civ.R. 37(B)(2)(c). *See also Collias v. Redburn*, 3d Dist. Wyandot No. 16-11-10, 2012-Ohio-2128, ¶ 23, citing Civ.R. 37(B)(2)(c). "Ohio courts have long recognized that the interests of justice are better served when courts address the merits of claims rather than using procedural devices to resolve pending cases." *Collias* at ¶ 23, citing *Moore v. Emmanuel Family Training Center, Inc.*, 18 Ohio St.3d 64, 70 (1985). In determining whether dismissal of an action is warranted for a discovery violation,

> the trial court should consider "the history of the case; all the facts and circumstances surrounding the noncompliance, including the number of opportunities and the length of time within which the faulting party had to comply with the discovery or the order to comply; what efforts, if any, were made to comply; the ability or inability of the faulting party to comply; and such other factors as may be appropriate."

*Id.*, quoting *Foley v. Nussbaum*, 2d Dist. Montgomery No. 24572, 2011-Ohio-6701, ¶ 31. Civ.R. 41(B)(1) provides, "Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action

or claim." "Civ.R. 41(B)(1) permits a trial court to dismiss an action or claim where a plaintiff fails to comply with any court order, whether related to discovery or not." *Action Group, Inc. v. NanoStatics Corp.*, 10th Dist. Franklin No. 13AP-72, 2013-Ohio-5542, ¶ 28.

{¶44} "The decision to dismiss under Civ.R. 37(B)(2)(c) and 41(B)(1) is within the sound discretion of the trial court." *Action Group, Inc.* at ¶ 29, citing *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 47 (1997) and *Toney v. Berkemer*, 6 Ohio St.3d 455, 458 (1983). Accordingly, we review for an abuse of discretion a trial court's decision whether to dismiss an action or part of an action based on a discovery violation. *See Collias* at ¶ 25, citing *Vaught v. Cleveland Clinic Found.*, 98 Ohio St.3d 485, 2003-Ohio-2181, ¶ 13. As we previously stated, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶45} Under this assignment of error, Jeffrey argues, without explanation or citation to the record, "The Appellee had failed to comply with a court order regarding the discovery cut-off." (Appellant's Brief at 15). App.R. 16(A)(7) requires that Jeffrey include in his brief: "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to * * * parts of the record on which appellant relies.*" (Emphasis added.) Under App.R. 12(A)(2), we are

not required to address arguments that have not been sufficiently presented for review or supported by proper authority, as required by App.R. 16(A)(7). *Black v. St. Marys Police Dept.*, 3d Dist. Mercer No. 10-11-11, 2011-Ohio-6697, ¶ 14.

**{¶46}** Nevertheless, we conclude that the trial court did not abuse its discretion by denying Jeffrey's June 1, 2012 "motion to dismiss the pending Hog Barn issue for failure to prosecute." After the trial court "grant[ed] a hearing on the limited issues of the 'hog barns'" on March 30, 2011, the hearing was originally scheduled for September 26, 2011; however, the trial court granted Theresa's August 17, 2011 motion to continue the hearing so that the parties could complete discovery and so that her counsel could attend a family reunion in France. (*See* Doc. Nos. 406, 418, 419). Jeffrey's counsel did not oppose that motion for a continuance. (Doc. No. 418). Also on August 17, 2011, Theresa served a request for production of documents on Jeffrey. (*See* Doc. Nos. 422, 427). Jeffrey filed a response to that request on October 28, 2011. (Doc. No. 427). However, according to Theresa, Jeffrey's response was incomplete. (*See* Doc. Nos. 476, 477). The trial court held a pretrial conference on December 19, 2011, at which it set Theresa's discovery cut-off date as February 29, 2012 and Jeffrey's discovery cut-off date as June 1, 2012. (Doc. No. 455).

**{¶47}** Apparently unable to complete discovery without intervention by the trial court, Jeffrey on June 1, 2012 filed his "motion to dismiss the pending Hog

Barn issue for failure to prosecute." (Doc. No. 475). It appears from Jeffrey's motion that he argued that Theresa failed to produce requested documents by the February 29, 2012 discovery cut-off set by the trial court. (*See* Doc. Nos. 455, 475). In response, Theresa argued that she was unable to complete her discovery by the cut-off date because Jeffrey failed to provide the documentation that she requested on August 17, 2011, which was necessary for the preparation of her discovery responses—namely, Hunt's appraisal report. (*See* Doc. No. 477). The trial court denied Jeffrey's June 1, 2012 motion on August 30, 2012. (Doc. No. 491).

{¶48} Based on our review of the record, it was not unreasonable, arbitrary, or unconscionable for the trial court to deny Jeffrey's June 1, 2012 "motion to dismiss the pending Hog Barn issue for failure to prosecute." Not surprisingly, the parties disagree over who was at fault in their discovery dispute. Although the trial court did not say so explicitly in its judgment entry denying Jeffrey's motion, it appears the trial court was satisfied that Theresa acted reasonably diligently in procuring and producing an appraisal report. (*See* Doc. No. 491). Amid the finger pointing, it was not an abuse of discretion for the trial court to deny Jeffrey's request to dismiss the hog barns issue, particularly considering that dismissal is the "harshest" discovery-violation sanction that "should only be imposed when the failure to comply with discovery is due to willfulness, bad faith or fault on behalf

of the respondent." *Collias*, 2012-Ohio-2128, at ¶ 23; *Houston v. Pickens*, 3d Dist. Marion No. 9-96-48, 1997 WL 86995, *2 (Feb. 26, 1997), citing *Cunningham v. Garruto*, 101 Ohio App.3d 656, 659-660 (3d Dist.1995) and *Toney*, 6 Ohio St.3d at 458.

**{¶49}** Jeffrey's ninth assignment of error is overruled.

**{¶50}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**